## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| CORY BONE AND LUIS CARRILLO, individually and on behalf of all other similarly situated, | § § § § | |
| *Plaintiffs,* | § § § | Civil Action No. 2:20-cv-00697 JURY TRIAL DEMANDED |
| vs. | § § § § | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(B) |
| XTO ENERGY, INC. | § § | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |
| *Defendant.* | § § § | |

## DEFENDANT XTO ENERGY INC.'S MOTION TO DISMISS THE OVERBROAD AND JURISDICTIONALLY DEFICIENT CLASS/COLLECTIVE CLAIMS IN THE FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), Defendant XTO Energy Inc. ("XTO") respectfully requests that the Court dismiss, limit and/or strike the class/collective allegations contained in Plaintiff Cory Bone ("Bone") and Plaintiff Luis Carrillo's ("Carrillo") (collectively, "Plaintiffs") First Amended Collective/Class Action Complaint ("First Amended Complaint" or "Complaint"). XTO does not seek to dismiss Plaintiffs' individual claims at this time, and is filing its First Amended Answer to those individual allegations in the Complaint contemporaneously with this Motion.[1]  Counsel for Plaintiffs does not concur in the relief requested herein.

---

[1]  Note, while XTO is not currently seeking dismissal of the purported class definition for the state law claim set forth in paragraph 105 and other related references in the First Amended Complaint, XTO denies that Plaintiffs have asserted an appropriate class under the New Mexico Minimum Wage Act, denies that such a class should be certified under Rule 23, and further denies that any such putative class members are similarly situated to Plaintiffs.

Plaintiffs have filed a lawsuit against XTO, a non-New Mexico entity, in the U.S. District Court for the District of New Mexico presumably because they allege their work took place in New Mexico subject to the New Mexico Minimum Wage Act ("NMMWA") and Fair Labor Standards Act ("FLSA"). Yet, Plaintiffs also plead a nationwide collective action despite the fact that they, themselves, were not at all times similarly-situated, and knowing that such a proposed collective definition implicates numerous, unidentified third parties. Plaintiffs cannot have it both ways. Federal Rule of Civil Procedure 12 and Tenth Circuit law require that Plaintiffs' claims unrelated to New Mexico and their overbroad FLSA collective claims and definition be dismissed.

## BACKGROUND

XTO is a leading natural gas and oil producer operating throughout the United States, Western Canada, and South America. [2] First Amended Complaint, Dkt. No 25, ¶ 23. Plaintiff Bone alleges that he provided services to XTO as a "Safety Consultant" near Carlsbad, New Mexico and in Texas for approximately twelve (12) months—from May 2018 through May 2019. *Id.* at ¶¶ 21 and 30. Plaintiff Carrillo alleges that he provided services to XTO as a "Safety Consultant" near Carlsbad, Jal, and Orla, New Mexico, [3] and in Texas for approximately sixteen (16) months—from December 2018 to April 2020. *Id.* at ¶¶ 21 and 31. According to Plaintiffs, as "Safety Consultants" their "primary job duties included enforcing XTO safety policies and procedures at XTO's and their clients' well sites." *Id.* at ¶ 35. Plaintiffs contend that their "daily

---

[2] XTO's Motion is premised in part on Rule 12(b)(6), which requires a district court to "accept all well-pleaded facts as true" and view them in the light most favorable to the plaintiff. *Peterson v. Xpo Logistics*, 812 F. App'x 754, 756 (10th Cir. 2020) (internal quotations omitted). XTO therefore relies here on the allegations contained in the Complaint, without waiving its right to later contest such allegations.

[3] Note, as explained in footnote 2, *supra*, XTO acknowledges that Plaintiff Carrillo asserts he provided services in "Orla, New Mexico" but notes that Orla is a city in Texas, not New Mexico. Additionally, XTO has no record that Plaintiff Carrillo ever provided services in Jal, New Mexico.

and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO and/or their clients," and that they "would conduct their day-to-day activities within mandatory and designed parameters in accordance with pre-determined operational plans created by XTO and/or their clients." *Id.* at ¶¶ 36 and 37.

Plaintiffs allege that they received a flat sum of pay for each day worked, but did not receive overtime compensation for hours worked over forty (40) in a workweek in violation of the FLSA. *Id.* at ¶¶ 2, 4, 32, and 47. Despite these broad allegations, Plaintiffs do **not** identify a single workweek in which either of them worked **any** hours over forty (40), nor have Plaintiffs identified a single workweek in which they are allegedly owed **any** overtime compensation. Similarly without specific allegations, Plaintiffs then generally aver that XTO failed to pay all other "Safety Consultants" in the United States overtime due under the FLSA. As defined in the First Amended Complaint, Plaintiffs seek to represent an expansive and overbroad FLSA collective consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*See id.* at ¶ 67. As described below, such a broad and vague class definition is improper, which this Court should dismiss, limit and/or strike.

## I.   RULE 12(B)(2) DISMISSAL OF ALLEGATIONS AGAINST NON-NEW MEXICO PUTATIVE CLASS MEMBERS IS WARRANTED FOR LACK OF PERSONAL JURISDICTION

Plaintiffs filed their First Amended Complaint on September 25, 2020, advancing individual claims under the FLSA and the NMMWA, as well as claims advanced on a collective action basis under the FLSA and class action basis under the NMMWA. *See generally* First Amended Complaint, Dkt. No 25. Essentially, Plaintiffs claim that, contrary to both statutes, they and other individuals who provided services to XTO were not paid proper overtime rates for all hours worked in excess of 40 hours per workweek. *See id.* at ¶ 4. Accordingly, Plaintiffs seek to certify a collective action of:

*All safety consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*Id.* at ¶ 67.  It is this attempt to pursue a nationwide collective action under the FLSA that is the subject of this Motion.  As will be demonstrated below, Plaintiffs' attempt to pursue relief for work performed outside of New Mexico is jurisdictionally defective, and should be disposed of at this stage.

### A.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant is entitled to dismissal of claims for which the Court lacks personal jurisdiction.  In determining whether personal jurisdiction exists, Plaintiffs bear the burden of proving personal jurisdiction can be properly exercised over XTO.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004).  Plaintiffs must make a prima facie showing that personal jurisdiction exists, whether with the Complaint or other materials in the record.  *See id.*

In a case involving multiple plaintiffs or multiple claims, personal jurisdiction does not necessarily exist regarding all contested parties or claims even when it indisputably exists for some of them; the existence of personal jurisdiction must be evaluated on a claim-by-claim and party-by-party basis.  *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (quoting 4A Charles A. Wright et al., Federal Practice and Procedure § 1069.7 (4th ed. 2015)) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

There are two kinds of personal jurisdiction that may exist for a given defendant and a given claim: specific jurisdiction and general jurisdiction.  Specific jurisdiction can only be warranted based on an "affiliation between the forum [state] and the underlying controversy," and it is "confined to adjudication of issues deriving from, or connected with, the very controversy that

establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal punctuation marks and citation omitted).  Unless the defendant had sufficient claim-underlying contact with the forum state, then irrespective of whatever other contacts it has had with the forum state, specific jurisdiction does not exist for that claim.  *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999) (noting specific jurisdiction cannot exist unless "the litigation results from alleged injuries that arise out of or relate to [in-forum] activities").  Moreover, even assuming the defendant had minimum contacts with the forum state, specific jurisdiction cannot be exercised when doing so would "offend[] traditional notions of fair play and substantial justice." *Benton*, 375 F.3d at 1078 (citation omitted).  That latter inquiry turns on the following factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* (citation omitted).

Alternatively, in cases where non-corporeal entities such as Defendant have been sued, general jurisdiction exists only in the forum "in which the [defendant] is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. Although general jurisdiction can authorize even lawsuits based solely on non-forum conduct, general jurisdiction is normally only warranted in states where the defendant is incorporated or has its principal place of business. *See id.* at 919; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Outside those two particular states, general jurisdiction requires proof of exceptional circumstances to justify it. *See Bauman*, 571 U.S. 117, at 139, n.19.

**B.**     **Plaintiffs Have Failed to Allege Sufficient New Mexico Contacts to Justify Specific Jurisdiction Regarding Pay for Non-New-Mexico Work**

Specific jurisdiction cannot be shown to exist for the claims Plaintiffs seek to advance regarding work performed outside New Mexico.  As near as can be determined, Plaintiffs are alleging that XTO engaged in FLSA-violative practices outside of New Mexico, thereby causing putative plaintiffs alleged harm outside of New Mexico.  Nowhere in the First Amended Complaint, or in any other part of the Court's record, is there anything indicating that the putative FLSA claims concerning non-New-Mexico work arise out of any of XTO's New Mexico contacts. In order to support specific jurisdiction for such FLSA claims in New Mexico, Plaintiffs must show that XTO made such claim-implicating contacts in New Mexico. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014) (observing that the minimum contacts that must underlie the exercise of specific jurisdiction must comprise "the defendant's contacts with the forum State itself," as opposed to "the defendant's contacts with persons who reside there").

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), demonstrates the need to show that each putative claim itself has sufficient in-forum contacts underlying it, rather than a similar in-forum claim.  *Bristol-Myers* involved a mass-tort action in California against a pharmaceutical company, alleging that one of the company's medications injured more than 600 plaintiffs in violation of California law.  *Id.* at 1778.  More than half of the plaintiffs were residents of other states, and relatedly, those non-California plaintiffs did not allege they obtained their allegedly damaging medications in California, nor did they allege any connection to their injuries or treatment in California.  *Id.*  Despite the lack of in-forum injury links for the out-of-state plaintiffs, the California Supreme Court concluded there was specific jurisdiction for their claims because, due to the extensive other contacts the company had with California, specific jurisdiction ostensibly could be warranted with "a less direct connection" than

usual.  *Id.* at 1778–79.  The California Supreme Court found such a connection in the similarity of out-of-state plaintiffs' claims to those raised by California plaintiffs, specifically that they all contested the same allegedly defective product and allegedly misleading marketing and promotion, and relatedly, that some research on the product was conducted in California.  *Id.* at 1779.

The United States Supreme Court disagreed and held that specific jurisdiction was lacking for the out-of-state plaintiffs' claims.  *Id.* at 1782.  In reaching this holding, the Court reemphasized that specific jurisdiction requires a connection between the lawsuit at issue and the defendant's own contacts with the forum state.  *See id.* at 1780 (quoting *Goodyear*, 564 U.S. at 919) (internal punctuation marks omitted) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.").  By contrast, all of the alleged company's conduct underlying the out-of-state plaintiffs' claims occurred outside of California.  *See id.* at 1778.  The holding of California's highest court, however, was inconsistent with the Supreme Court's holdings on personal jurisdiction, as via what the Court described as a "spurious forum of general jurisdiction," it used contacts only relevant for general jurisdiction analysis to determine the sort of contacts required for specific jurisdiction to exist.  *Id.* at 1781.  But as the Court had previously noted, a party's "continuous activity of some sorts within a state is not enough to support the demand that the [party] be amenable to suits unrelated to that activity." *Id.* (quoting *Goodyear*, 564 U.S. at 927) (internal punctuation mark omitted).  Moreover, the similarity between out-of-state and in-state plaintiffs' claims had no bearing on whether specific jurisdiction existed at all; any contacts and other links between a defendant and a third party, even a fellow plaintiff, is not normally enough to justify specific jurisdiction for a plaintiff's claims. *See id.*

Although this case involves federal rather than state law claims, the same forum-specific contacts are required to justify specific jurisdiction here as in *Bristol-Myers*. Federal law claims, even when brought in federal court, are normally subject to precisely the same limits on personal jurisdiction as state law claims. *See United States v Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (noting that federal courts are limited by whether the forum state's courts could properly exercise personal jurisdiction over a party "[u]nless Congress specifically indicates otherwise").[4] Although federal courts have greater latitude over exercising personal jurisdiction when the underlying federal statute authorizes nationwide service of process, *see Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000), the FLSA is not such a statute. *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (per curiam). Consequently, for specific jurisdiction to exist regarding claims for work performed outside New Mexico, Plaintiffs must prove XTO had sufficient contacts with New Mexico.

Neither the Supreme Court nor the Tenth Circuit have addressed the specific issue about whether there is something about the FLSA that makes the standard specific jurisdiction analysis, as reiterated in *Bristol-Myers*, inapplicable. But in *Bristol-Myers*'s wake, district courts have repeatedly held that FLSA claims, like most other federal or state law claims, generally require the defendant to have in-forum contacts underlying an individual plaintiff's claims for that plaintiff's claim to be properly heard in the forum. *See, e.g.*, *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 279–80 (S.D.N.Y. 2019) (dismissing out-of-state plaintiffs' FLSA claims against

---

[4] Those limits, in turn, include whatever restrictions the forum state's long-arm statute imposes on personal jurisdiction. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1506–07 (10th Cir. 1995). However, because New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible, *see FDIC v. Hiatt*, 872 P.2d 879, 881 (N.M. 1994), this issue can be resolved solely based on whether the Constitution permits the exercise of personal jurisdiction here.

out-of-state defendants for lack of personal jurisdiction); *Szewczyk v. United Parcel Serv., Inc.*, Civ. A. No. 19-1109, 2019 WL 5423036, at *7–8 (E.D. Pa. Oct. 22, 2019) (recognizing that "§ 216(b) does not relieve plaintiffs of their obligation to establish personal jurisdiction over a defendant in compliance with constitutional due process principles"); *Rafferty v. Denny's, Inc.*, No. 5:18-CV-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) (dismissing FLSA claims of out-of-state plaintiffs, finding that that "exercising personal jurisdiction over … claims of any out-of-state putative collective member would violate due process"); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 61–62 (D. Mass. 2018) (relying on *Bristol-Myers*, the court denied conditional certification of out-of-state plaintiffs against out-of-state defendants finding the court lacked personal jurisdiction over their claims).

As the Tenth Circuit's own authority has consistently emphasized the requirement that a claim must be supported by sufficient in-forum contacts to justify personal jurisdiction in the forum state, this Court should follow its pattern and hold that, since there are no allegations of any such sufficient contacts for claims regarding work performed outside New Mexico, those claims cannot be heard here under a specific jurisdiction theory. *See Newsome v. Gallacher*, 722 F.3d 1257, 1262 (10th Cir. 2013) (holding that although various individual defendants had sufficient contacts with the forum state to justify personal jurisdiction over them, a corporate defendant's contacts were insufficient as it "performed all of its relevant services out-of-state on an out-of-state transaction"); *Dobbs v. Chevron U.S.A., Inc.*, 39 F.3d 1064, 1068 (10th Cir. 1994) (upholding dismissal of multiple defendants from a case when their only in-state contacts relevant to the claims against them "can hardly be regarded as having significant impact in" the forum state).

Even assuming *arguendo* there were some level of contacts that might justify the exercise of specific jurisdiction over Defendant regarding claims connected with non-New-Mexico work,

exercising such jurisdiction here would offend traditional notions of fair play and substantial justice. *See Benton*, 375 F.3d at 1078. With regard to the first factor involved in that inquiry, it would be less convenient for XTO to litigate claims regarding out-of-state plaintiffs, requiring intrusive discovery and additional litigation activity, in a state where neither those plaintiffs, the relevant company witnesses, nor the underlying claims have any connection to the forum. *Cf. Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 38 (1st Cir. 2016) (noting that an Oregon corporate defendant's burden of appearing in Massachusetts for litigation was a factor "modestly in its favor" in opposing the exercise of specific jurisdiction).

The second factor even more strongly disfavors the exercise of specific jurisdiction in New Mexico, as New Mexico has no interest at all in resolving the claims of out-of-state putative plaintiffs against an out-of-state defendant within its borders; logically, the resident states of those parties have stronger interests in securing resolutions for the claims. *Compare Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1356 (Fed. Cir. 2017) (internal quotation marks and citation omitted) ("Xilinx, which is headquartered in California, indisputably has an interest in protecting itself . . . by obtaining relief from a nearby federal court in its home forum."), *with Namer v. Martino*, Civ. A. No. 15-3417, 2016 U.S. Dist. LEXIS 5311, at *15–16 (E.D. La. Jan. 15, 2016) (observing that a forum state "has no interest in adjudicating a dispute that . . . appears to have taken place purely in [another state] between parties with the majority of their contacts in [that other state]").

The third factor likewise disfavors the exercise of specific jurisdiction, as the putative out-of-state plaintiffs remain fully able to pursue relief for their claims within their respective states, or even in either of XTO's states of residence. *Cf. Roy*, 353 F. Supp. 3d at 58 (acknowledging that, although courts within the forum state were constitutionally forbidden from exercising

specific jurisdiction over out-of-state plaintiffs' claims, they nevertheless "would potentially be able to bring a nationwide collective action" in either of two states where general jurisdiction could be exercised).

Finally, the fourth and fifth factors are neutral at best; this case can be at least as efficiently administered in XTO's two states of general jurisdiction (i.e., where XTO is incorporated and where it maintains its principal place of business), while New Mexico certainly has no more interest in resolving the wage and hour claims of out-of-state residents and an out-of-state defendant than their home states do. *See Baskin-Robbins Franchising*, 825 F.3d at 38 (noting that although a forum state's courts "can effectively administer justice in the [subject] dispute, they have no corner on the market"); *Namer*, 2016 U.S. Dist. LEXIS 5311, at *15–16 (noting that a forum state lacks interest over resolving claims by out-of-state plaintiffs against an out-of-state defendant regarding out-of-state events); *see also Xilinx*, 848 F.3d at 1356 (stating that no state had a relatively greater interest in resolving the federal claim involved in the litigation, as "the same body of federal . . . law would govern the . . . claim irrespective of the forum").

As it is impossible for Plaintiffs to allege sufficient facts justifying the exercise of specific jurisdiction over FLSA claims regarding work performed outside of New Mexico, those claims can only be heard in this forum if the Court can properly exercise general jurisdiction over XTO—which it cannot.

### C.   Plaintiffs Have Not Alleged the Particular Sort of Contacts that Would Justify General Jurisdiction

Plaintiffs have even more clearly failed to allege facts that justify the exercise of general jurisdiction over XTO, such as contending that XTO's principal place of business is New Mexico—which it is not. In fact, to the extent it touches on general jurisdiction at all, the First Amended Complaint outright disclaims the existence of facts that would most easily do so as it

asserts that XTO is a Delaware corporation. *See* First Amended Complaint, Dkt. No 25, at ¶ 15. Aside from the New Mexico contacts underlying some claims here regarding work performed in New Mexico (which, by the Complaint's own reckoning, are the same non-unique contacts that can also be found throughout the United States, *see id.* at ¶ 21), the only other New Mexico contacts alleged in the Complaint is the fact that XTO is "licensed to and doing business in New Mexico." *Id.* at ¶ 15. This cannot help Plaintiffs prove the existence of general jurisdiction. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318–19 (11th Cir. 2018) (rejecting plaintiffs' arguments that general jurisdiction could be exercised over a defendant based on its registration to do business in the forum state).

Plaintiffs also allege briefly, in a single paragraph of their First Amended Complaint, that this Court may exercise general jurisdiction over XTO "because XTO's significant contacts with, and business operations in, New Mexico are systematic and continuous such that it is essentially at home in New Mexico." *See* First Amended Complaint, Dkt. No. 25, at ¶ 18. But nowhere in their First Amended Complaint do they detail what, exactly, makes XTO "essentially at home" in New Mexico rather than somewhere else, and details rather than broad strokes are required to justify general jurisdiction here. *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citation omitted) (observing that in analyzing the propriety of exercising personal jurisdiction, courts are not required "to accept as true a legal conclusion couched as a factual allegation"); *Goodwin v. Bruggeman-Hatch*, Civ. A. No. 13-cv-02973-REB-MEH, 2014 WL 4244214, at *4 (D. Colo. July 14, 2014) (holding that it was inappropriate to exercise general jurisdiction over a defendant when the plaintiff "d[id] not allege any other specific facts about" that defendant aside from a single email); *ConocoPhillips Co. v. Jump Oil Co.*, 948 F. Supp. 2d 1272, 1279 (N.D. Okla. 2013) (observing that when a plaintiff asserts general jurisdiction is

appropriate, they "must offer specific facts . . . showing that each defendant is subject to personal jurisdiction").

At no point in their pleading do Plaintiffs show that XTO is incorporated in New Mexico or that XTO has its principal place of business in New Mexico, two paradigmatic qualities that make the exercise of general jurisdiction appropriate. *See Goodyear*, 564 U.S. at 919; *Daimler*, 571 U.S. at 137. Rather, the most the First Amended Complaint has done is show contacts that can be found both in New Mexico and in other locations across the United States, which is a far cry from showing the sort of contacts unique to New Mexico that would justify exercising general jurisdiction in New Mexico in particular. *See, e.g.*, First Amended Complaint, Dkt. No. 25, at ¶¶ 21 ("XTO has maintained a working presence throughout New Mexico (and the United States) . . . ."), and 24–25 (alleging XTO's divisions "include the Permian Division, Delaware Division, [and] Mid-Continent Division," with the Permian Division "operat[ing] in [both] New Mexico and Texas."). Although Plaintiffs can doubtlessly raise New-Mexico-based claims in New Mexico, they have not even come close to showing they are entitled to raise any and all claims they wish in New Mexico despite their lack of a substantial New Mexico connection.

By any applicable measure, FLSA claims for work performed outside New Mexico cannot properly be heard by this Court. Plaintiffs have not alleged and cannot allege that such claims arise out of XTO's New Mexico contacts, thus refuting specific jurisdiction, and they have not alleged and cannot allege that XTO has the particular kinds of New Mexico contacts justifying general jurisdiction over it. Irrespective of whether some claims are properly before this Court, or even whether other claims parallel what is alleged for FLSA claims centering on non-New-Mexico work, such extra-jurisdictional claims fall outside this Court's jurisdiction. *See Bristol-Myers*, 137 S. Ct. at 1782; *Soma Med. Int'l*, 196 F.3d at 1298.

### D.      It is Proper to Dismiss Jurisdictionally Flawed Claims Now

There is no reason to allow Plaintiffs to move forward in this litigation regarding claims for non-New-Mexico work.  When, as here, there are apparent jurisdictional defects in such putative claims, it is more efficient to resolve such defects earlier on a motion to dismiss.  To do otherwise would require the parties to proceed with the notice process on behalf of individuals over whom the Court does not have jurisdiction, only to have them dismissed from the case later via separate motions to dismiss.  *See Weirbach v. Cellular Connection, LLC*, No. 5:19-cv-05310-JDW, 2020 U.S. Dist. LEXIS 144497, at *9 (E.D. Pa. Aug. 12, 2020) (holding that the court had to "tackle" the question of personal jurisdiction prior to issuing notices of the collective action because, if notice was provided to potential plaintiffs whose claims did not fall within the court's jurisdiction, "it would only sow confusion").  In addition, it would achieve nothing except to waste the parties' resources to conduct discovery regarding parties and claims over which this Court cannot exercise personal jurisdiction.  *See Naartex Consulting Corp. v. Watt*, 542 F. Supp. 1196, 1199 (D.D.C. 1982) (holding that, in light of apparent jurisdictional defects involving a plaintiff's claims against multiple individuals, "allowing plaintiff to conduct even limited discovery into [those] defendants . . . would be unjustified").  For these reasons, the issue of personal jurisdiction over claims regarding non-New-Mexico work should be resolved at this early stage, and such claims must be dismissed under Federal Rule of Civil Procedure 12(b)(2).

## II.      RULE 12(B)(6) – DISMISSAL AND/OR STRIKE OF OVERBROAD FLSA COLLECTIVE DEFINITION AND RELATED ACTION ALLEGATIONS

### A.      Introduction

Dismissal is also proper under Federal Rule of Civil Procedure 12(b)(6).  Specifically, the Court should dismiss Plaintiffs' overbroad collective definition because it fails to give XTO fair notice regarding the composition of Plaintiffs' proposed collective and is not supported by any

plausible factual allegations as required by the Federal Rules of Civil Procedure.  In the First

Amended Complaint, Plaintiff Bone—a "Safety Consultant" working for RigUp, Inc., alleges he

provided services to XTO for approximately twelve (12) months in Carlsbad, New Mexico and

Texas.[5]  Likewise, Plaintiff Carrillo—also a "Safety Consultant" working for RigUp, Inc., alleges

he provided services to XTO for approximately sixteen (16) months in Carlsbad, Jal, and Orla,

New Mexico,[6] and Texas.[7]  Now, Plaintiffs claim that XTO failed to pay them, and importantly,

all other "Safety Consultants" in the United States overtime due under the FLSA.  As defined in

the Complaint, Plaintiffs seek to represent an expansive and overbroad FLSA collective consisting

of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United*
> *States, at any time from July 14, 2017 through the final disposition of this matter.*

*See* First Amended Complaint, Dkt. No 25, at ¶ 67.  The strikingly overbroad collective definition

contained in the First Amended Complaint fails to provide XTO with notice of whom Plaintiffs

---

[5]  Notably, Plaintiff Bone's services to XTO were discontinued after he was found to be sleeping on job locations in multiple instances.

[6]  Note, as explained in footnote 2 and 3, *supra*, XTO acknowledges that Plaintiff Carrillo asserts he provided services in "Orla, New Mexico" but notes that Orla is a city in Texas, not New Mexico.

[7]  XTO's contract was with the third party consulting firm RigUp, Inc., which provided various services to XTO, including the services of Plaintiff Bone and Plaintiff Carrillo.  Plaintiff Bone provided services to through RigUp, Inc. to XTO as a Drilling Safety Consultant in drilling operations near Carlsbad, New Mexico from approximately May 2018 through February 2019 and as a Wellwork Integrity Consultant concerning wellwork operations near Andrews, Texas, from approximately March 2019 through May 2019.  Plaintiff Carrillo provided services through RigUp, Inc. to XTO from December 2018 to April 2020 as a Drilling Safety Consultant near Carlsbad, New Mexico and near Orla, Texas—XTO does not have record of Plaintiff Carrillo providing services in Jal, New Mexico.  Despite these distinct and separate services, Plaintiffs' proposed collective definition generically encompasses all "Safety Consultants" in the United States without regard to the services Plaintiff Bone or Plaintiff Carrillo actually provided, the locations where they provided such services, or the fact that the services were provided through RigUp, Inc., the consulting firm through which both Plaintiffs were engaged.

seek to represent in this lawsuit. Instead, Plaintiffs' use of an ill-defined nationwide all-encompassing proposed collective definition is nothing more than a thinly veiled attempt to spark virtually unlimited solicitation and discovery into XTO's operations throughout the United States in the hopes of capturing as many new litigants as possible to increase potential settlement leverage, disregarding that other "Safety Consultants" may be wholly dissimilar to Plaintiffs in title, duties, location, supervisors, schedules, hours, classification (as employees or contractors), third party consulting firms, and more.

Plaintiffs' subterfuge does not stop there. Notably, Plaintiffs do not bring suit against their actual consulting firm/employer RigUp, Inc. (a third-party vendor to XTO—incredulously escaping even a mention in the First Amended Complaint), and instead have filed this suit against the vendor's customer (XTO). In so doing, Plaintiffs are attempting to circumvent the factual differences that the actual consulting firms (who are actually paying these workers) may have among these "Drilling Safety Consultants" or "Wellwork Integrity Consultants," such as pay plans, contractual terms, oral representations, length of terms, benefits, classifications (as employees or contractors), and so forth. Moreover, Plaintiffs' proposed collective definition is not limited to "similarly situated" individuals who provided services through RigUp, Inc. as "Drilling Safety Consultants" or "Wellwork Integrity Consultants" near Carlsbad, New Mexico, or near Orla or Andrews, Texas.[8]

---

[8]   XTO does not concede that all "Drilling Safety Consultants" or "Wellwork Integrity Consultants" in Carlsbad, New Mexico or in Orla or Andrews, Texas who are working for RigUp, Inc. are "similarly situated" with Plaintiffs, or that conditional and/or class certification of such a group would be appropriate in this case. XTO merely notes that such an allegation may have been more likely to satisfy the requirements of Fed. R. Civ. P. 8 and 12(b)(6) at the pleading stage.

As such, and as set forth in more detail below, Plaintiffs have pled no facts to suggest that all "Safety Consultants" *nationwide* who provided services to XTO are similarly situated with respect to their FLSA allegations regarding particular consulting firms, titles, duties, locations, supervisors, schedules, pay plans, guarantees, contractual terms, employee/contractor classification, length of terms, hours worked, and alleged overtime entitlement under the FLSA. The Court should therefore dismiss and/or strike Plaintiffs' proposed collective definition and proposed class definition under Fed. R. Civ. P. 12(b)(6) and 12(f).

**B.    Plaintiffs' FLSA Collective Action Allegations and Overbroad Collective Definition[9]**

As outlined above, Plaintiffs seek to represent individuals in a nationwide "collective" action under the FLSA. *See id.* at ¶ 67. Specifically, Plaintiffs seek to represent an expansive and ill-defined FLSA collective consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*See id.*   The First Amended Complaint, however, does not provide any specific plausible allegations regarding the duties of "Safety Consultants" or the complained of pay practices to which these other consultants were allegedly subject—nor do Plaintiffs identify the actual roles in which they provided services to XTO ("Drilling Safety Consultant" and "Wellwork Integrity Consultant"). Instead, Plaintiffs offer the typically stated, conclusory allegation that the putative class members were "similarly situated." Tellingly, other than Plaintiffs' generic allegations regarding their own supposed "Safety Consultant" duties, Plaintiffs fail to make any plausible

---

[9]  XTO's Motion is premised in part on Rule 12(b)(6), which requires a district court to "accept all well-pleaded facts as true" and view them in the light most favorable to the plaintiff. *Peterson v. Xpo Logistics*, 812 F. App'x 754, 756 (10th Cir. 2020) (internal quotations omitted). XTO therefore relies here on the allegations contained in the Complaint, without waiving its right to later contest such allegations.

allegations regarding the duties of other "Safety Consultants" (to the extent they even exist)—including other "Drilling Safety Consultants" or "Wellwork Integrity Consultants" near Carlsbad, New Mexico, or in Texas.  Moreover, other than their own limited experience in New Mexico, Plaintiffs do not even attempt to identify another specific location in which they allege that "Safety Consultants" with the same duties were subjected to the same pay policy—apart from the vague assertion that they also worked in Texas.  *See id.* at ¶¶ 30-31.  Plaintiffs also fail to allege any facts regarding the number of individuals within the proposed collective or class, the locations where they performed services, or the circumstances of their own compensation, contractual and/or employment relationships (including whether they were employed or otherwise compensated by RigUp, Inc., or a different consulting firm, or whether they were retained directly by XTO).  As explained below, these deficiencies render Plaintiffs' collective allegations and class allegations insufficient under Fed. R. Civ. P 8's pleading standards and therefore unsustainable.

### C.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 8(a)(2) requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2).  The Supreme Court has explained that a complaint does not need detailed factual allegations, but "more than labels and conclusions" are necessary, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Thus, "to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" [10]  *See Khalik v. United Air Lines*, 671 F.3d 1188,

---

[10]     Similarly, Fed. R. Civ. P. 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  As a "challenge[] [to] the legal sufficiency of the pleading," a motion to strike may be "governed by the same standards

1190-91 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Guereca v. Cordero*, No. 2:19-CV-568-GJF-SMV, 2020 U.S. Dist. LEXIS 54399, at *16 (D.N.M. 2020) (quoting *Iqbal*, 556 U.S. at 678). Courts will disregard any "conclusory statements and look only to whether the remaining, factual allegations" state a plausible claim to relief. *See Khalik*, 671 F.3d at 1190-1191. As such, plausible factual allegations are required to support legal conclusions. *See id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are wholly insufficient. *Iqbal*, 556 U.S. at 678.

The FLSA permits an employee to pursue a collective action in a representative capacity on behalf of persons who are "similarly situated" to the plaintiff and who "opt in" to the collective action through a written consent to the court. 29 U.S.C. § 216(b). To act in a representative capacity, a plaintiff may seek conditional certification under the FLSA, which permits the plaintiff to send notices to potential collective members. As the Tenth Circuit and courts in this District have noted, the FLSA does not define "similarly situated"—however, to survive a motion to dismiss at this initial stage, a plaintiff must put forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2016 U.S. Dist. LEXIS 169884, at *10 (W.D. Okla. 2016) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)) (internal quotation marks omitted).

---

as a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)." *In re Gabapentin Patent Litigation*, 648 F.Supp.2d 641, (D.N.J. 2009).

In the Tenth Circuit, "a Rule 12(b)(6) motion to dismiss is appropriate to challenge the sufficiency of class allegations [even] when the plaintiffs have not moved for conditional certification." *Martin v. Tap Rock Res., LLC*, 2020 U.S. Dist. LEXIS 79421, *8 (D.N.M. May 5, 2020); *Cooper*, 2016 U.S. Dist. LEXIS 169884, at *4 (explaining that "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery").  At the pleading stage, "the court will examine whether the complaint provides the defendant with fair notice of the grounds of the claim for relief, brought by a class of plaintiffs who are similarly situated." *Deakin v. Magellan Health, Inc.*, No. 17-CV-0773-WJ-KK, 2018 U.S. Dist. LEXIS 103967, at *8 (D.N.M. 2018) (internal citations omitted).  Moreover, a "court may grant the motion to dismiss the collective action claim if the complaint fails to provide fair notice of the 'similarly situated' putative class because the class is insufficiently defined or significantly overbroad." *Id.* at *3 (citing *Lenore v. Okla. Blood Inst.*, No. CIV-17-1326-M, 2018 U.S. Dist. LEXIS 25492, at *3-4 (W.D. Okla. Feb. 16, 2018) (holding that, "[i]n order to withstand a motion to dismiss a collective action claim, a plaintiff must give the defendant fair notice of the putative class.")).  Courts "will therefore review the complaint to determine whether Plaintiff has stated a plausible entitlement to relief by the putative class members [] which is sufficient to provide fair notice to Defendant." *See Tap Rock Res.*, 2020 U.S. Dist. LEXIS 79421, at *9.  Otherwise, without these pleading requirements, plaintiffs' "counsel may have some incentive to keep the claims unspecific to achieve the largest possible class." *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012).  Class definitions that lack substantial allegations that the putative class members are similarly situated are "overbroad and unworkable" because they would require "individual investigations" into each potential plaintiff's class membership, which is a "daunting" task that makes such overbroad definitions wholly

"insufficient." *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13-14.   As explained below, Plaintiffs fail to meet this standard, and, therefore, their insufficient class allegations should be dismissed in their entirety.

  **D.**  **Argument and Authorities**

  Plaintiffs' proposed class definition is defective and insufficient to place XTO on notice of the putative class members.   As noted above, Plaintiffs seek to represent an expansive and ill-defined class consisting of:

> *All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter.*

*See* First Amended Complaint, Dkt. No. 25, at ¶ 67.  Plaintiffs' proposed class definition cannot survive dismissal because they have not alleged sufficient details regarding their own duties or the allegedly applicable pay practices and the allegedly similar duties and pay practices concerning the putative class members[11] and the Complaint lacks any factual basis to support a class definition encompassing the entirety of the United States, without any geographic limitations.  Plaintiffs have plainly failed to put forth "*substantial allegations*" that they and "the putative class members were together the victims of a single decision, policy, or plan."  *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *10 (citing *Thiessen*, 267 F.3d at 1102) (emphasis added).

---

[11]   The putative class members are broadly defined as "All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States"—which needlessly encompasses an expansive range of individuals across the entire United States who performed services even only tangentially related to any aspect of safety in the oil and gas industry, without regard to Plaintiffs' own roles or duties "Safety Consultants" near Carlsbad, New Mexico, or Orla and Andrews, Texas.  *See id.*

1.     **Plaintiffs' Vague Description of the Proposed Class Fails to Identify Which Workers Plaintiffs Seek to Represent**

a.     **Alleged Duties and Conclusory Allegations Regarding XTO**

Plaintiffs contend that they worked as "Safety Consultants" and that, during their brief tenure, their "primary job duties included enforcing XTO safety Policies and procedures at XTO's and their clients' well sites."  First Amended Complaint, Dkt. No. 25, ¶¶ 30-31, 35.  Plaintiffs further contend that their "daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO and/or their clients," and that they "would conduct their day-to-day activities within mandatory and designed parameters in accordance with pre-determined operational plans created by XTO and/or their clients."  *Id.* at ¶¶ 36 and 37.  Based on this generic and vague description of their own alleged duties and conclusory allegations regarding applicable policies/plans of XTO, Plaintiffs attempt to represent a nationwide class consisting of other allegedly similarly situated "Safety Consultants" who performed *any* consulting work related to safety and operations in the oil and gas industry.  Such an attempt, however, fails to provide XTO with fair notice of the putative class and fails to meet the pleading standards of Rule 8 and its progeny.

To survive the pleading standards required by *Twombly* and *Iqbal* for FLSA collective actions, Plaintiffs must allege "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *10 (citing *Thiessen*, 267 F.3d at 1102) (internal quotation marks omitted).  As an initial matter, the Complaint is devoid of *any* factual allegations—much less substantial allegations— revealing whether there was any sufficiently similar decision, policy, or plan applicable to Plaintiffs and the putative class members *nationwide*.  Rather, Plaintiffs conclusory allege that "numerous Safety Consultants… [were] paid a day rate only and no overtime" and that, "[w]hile

the exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work in the oilfield." *See* First Amended Complaint, Dkt. No. 25, ¶¶ 27-29. Plaintiffs' failure to present any factual allegations relating to an allegedly applicable nationwide policy or plan alone warrants dismissal of the overbroad class definition. *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13 (citing *Thiessen*, 267 F.3d at 1102).

### b.    Alleged Pay Scheme

While Plaintiffs suggest that the putative collective is held together by a common "day rate" pay scheme, this allegation is illusory. The Complaint is void of the economic reality of the business relationship giving rise to the services that Plaintiffs provided to XTO. Plaintiffs make no mention of the actual entity that employed them or to which they contracted—RigUp, Inc. Nor do Plaintiffs mention any of the several other consulting firms that would potentially be encompassed by the overbroad definition of the proposed class. Nor do they make any mention as to how the various compensation schemes of those other consulting firms are similar to their own. Nor do Plaintiffs even identify the actual roles in which they provided services to XTO ("Drilling Safety Consultant" and "Wellwork Integrity Consultant").

Plaintiffs have pled no facts, nor included any related criteria in the proposed class definition, to suggest that all "Safety Consultants" in the entire United States who work for any other employer or consulting firm are similarly situated with respect to Plaintiffs' allegations that they are entitled to overtime compensation under the FLSA. Rather, the sole requirement for *any* individual in the United States to satisfy the proposed class definition is the mere performance of services as a "Safety Consultant." First Amended Complaint, Dkt. No. 25, ¶ 67. This definition is likewise fatally overbroad because Plaintiffs provide no explanation of how the contemplated "day rate" scheme might operate—nor do Plaintiffs narrow the proposed class to other "Drilling Safety Consultants" or "Wellwork Integrity Consultants" who worked for RigUp, Inc. and

received only a daily rate as compensation.  Thus, for example, FLSA-exempt "Drilling Safety Consultants" or "Wellwork Integrity Consultants" could satisfy the proposed definition, as could individuals who **never** worked *any* hours in excess of forty (40) hours in a single workweek. Moreover, even employees of XTO or other unidentified third party consulting firms could be erroneously included in Plaintiffs' proposed class.

Despite failing to describe how XTO—or their actual employer/contractor, RigUp, Inc.— failed to properly calculate their overtime, Plaintiffs use the "day rate" moniker as a purported class-making talisman.  But, indeed, even if some or all of the putative class members received some "day rate" as a part of their compensation package from any particular consulting firm, Plaintiffs make no reference as to how those other compensation schemes are similar, nor do they mention how the compensation scheme at their own consulting firm, RigUp, Inc., or any other, may be an unlawful common plan or scheme—nor do Plaintiffs plead *substantial allegations* that such a compensation scheme is somehow applicable to a nationwide class.  The proposed class of all "Safety Consultants" in the nation is overbroad and unworkable, as it encompasses a vast array of contractors that worked on XTO projects over the past three years, irrespective of whether they have performed the same or similar duties, whether they had the same or similar titles (i.e., "Drilling Safety Consultants" or "Wellwork Integrity Consultants"), whether they were subject to the same or similar practices, whether they worked for the same consulting firm, and whether there were eligible for overtime compensation or not.  Thus, it is clear that the proposed class definition would require "individual investigations" into each potential plaintiff's class membership, which is a "daunting" task that makes such overbroad definitions wholly "insufficient." *See Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13-14; *cf. McDonald v. Gore Nitrogen Pumping Serv., LLC*, No. CIV-18-1010-G, 2019 U.S. Dist. LEXIS 23094, at *10 (W.D. Okla. 2019) (finding that a plaintiff

had sufficiently defined the proposed FLSA collective when he provided "specific job titles, descriptions, and duties" and the complaint contained "substantial factual allegations of a company-wide unlawful payment scheme") and *Deakin*, 2018 U.S. Dist. LEXIS 103967, at * 10 (holding same).  Plaintiffs' failure to plead sufficient facts alleging a common unlawful pay plan or scheme is fatal to the overstated, ill-pled proposed class of workers.

### E. Plaintiffs Failed to Plead Facts Supporting a Nationwide Class.

*Even if* the proposed class definition was sufficient to give XTO notice of the putative class members—which it does not—the Court should still dismiss Plaintiffs' class allegations because they offer nothing more than mere conjecture and unfounded speculation regarding workers outside of New Mexico and Texas, the only locations in which Plaintiffs contend they worked. Moreover, Plaintiff Bone alleges he worked near Carlsbad, New Mexico and in Texas for approximately twelve (12) months, whereas Plaintiff Carrillo alleges he worked new Carlsbad, Jal, and Orla, New Mexico, and in Texas, for approximately sixteen (16) months.  *See* First Amended Complaint, Dkt. No. 25, ¶¶ 21, 30-31.  Despite their limited experience in New Mexico and Texas, without explanation, Plaintiffs now attempt to represent a class of all "Safety Consultants" across the United States.  Moreover, Plaintiffs have failed to provide any factual support to the unfounded assertion that the "putative class members… have been subjected to the same [allegedly] illegal pay system under which Plaintiffs worked and were paid."  *See id.* at ¶ 13.  Yet, Plaintiffs offer **no** plausible facts to demonstrate that they have any knowledge or awareness of *any* alleged common policy or practice that *any* putative class member was subject to, much less that such policy or practice was in *any* way unlawful under the FLSA.  As discussed above, Plaintiffs admit their experience was limited to New Mexico and Texas, and they make no plausible allegation that either of them worked elsewhere.  *See* id. at ¶¶ 30-31.  Moreover, Plaintiffs allege that they provided   services   to   XTO—neglecting   to   mention   the   economic   reality   of   their

employer/consulting firm RigUp, Inc.—for only a twelve (12) month period with respect to Plaintiff Bone and a sixteen (16) month period with respect to Plaintiff Carrillo. *See id.* As such, it is entirely implausible that Plaintiffs have the requisite knowledge or awareness to present allegations sufficient to support a nationwide class of "Safety Consultants" based on their limited experience with RigUp, Inc., providing services to XTO in only New Mexico and Texas.

Plaintiffs' proffered approach is no different from the one rejected by the Northern District of Texas in *Ecoquij-Tzep v. Hawaiian Grill* where the plaintiff "merely alleged his belief that there are employees 'like the plaintiff' who have not been paid minimum wages or overtime, going back three years." 2016 U.S. Dist. LEXIS 90513, at *13-14 (N.D. Tex. July 12, 2016). Like the *Hawaiian Grill* plaintiff, Plaintiffs have merely expressed their belief, masquerading as little more than conclusory allegations, that there are other "Safety Consultants" who were entitled to but did not receive overtime under the FLSA because they received daily rate compensation. As the Court noted in *Hawaiian Grill*, such "threadbare recitals" based on Plaintiffs' subjective beliefs "are insufficient to survive a motion to dismiss." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Additionally, Plaintiffs have failed to assert any specific plausible allegations regarding the titles, duties, or pay practices of other "consultants," identify any geographic location of the other individuals they seek to represent, identify the varied third party consulting firms that employed these other individuals (much less their own third party firm, RigUp, Inc.), or allege whether these individuals in fact performed services in excess of forty (40) hours per week and were entitled to but denied overtime compensation. These deficiencies are fatal to Plaintiffs' over broad class allegations. For example, in *Cooper v. Coil Chem, LLC*, a sister court dismissed a plaintiff's FLSA class allegations because the propose class of "all individuals employed by Coil Chem, LLC in the past 3 years and who were paid a salary and a job bonus" was too broad to provide fair notice to

the defendants and "included virtually every [individual] who worked for [the] [d]efendant in the referenced time period." *Cooper*, 2016 U.S. Dist. LEXIS 169884, at *13. In the pending case, the Complaint suffers the same deficiencies and the overbroad putative class definition encompasses nearly every individual who performed services even only tangentially related to safety operations. Therefore, the Court should reach the same result here and dismiss and/or strike Plaintiffs' overly broad class allegations in the First Amended Complaint.

## III.   CONCLUSION

Plaintiffs' FLSA collective action allegations fail to provide XTO fair notice of the putative class. As discussed above, the failure to present substantial allegations relating to an allegedly applicable nationwide policy or plan alone warrants dismissal of the overbroad class definition in the First Amended Complaint. Additionally, Plaintiffs have failed to put forth any plausible allegations to support the proposed representation of any putative class, much less a proposed class outside of New Mexico or Texas—the only areas in which Plaintiffs contend they worked. Similarly, Plaintiffs have failed to put forth any plausible allegations to support the proposed representation of any putative class of individuals who worked for consulting firms other than RigUp, Inc. Therefore, the Court should dismiss or strike Plaintiffs' overly broad class definition and allegations from the First Amended Complaint.

Moreover, the First Amended Complaint's FLSA collective allegations fail to provide any justification for this Court to exercise general or specific jurisdiction over claims regarding work performed outside of New Mexico. As outlined in detail above, the Court cannot exercise general jurisdiction over XTO because, contrary to Plaintiffs' unfounded and unsupported assertion otherwise, XTO cannot be fairly regarded as at home in this District. Therefore, the Court cannot fairly exercise general jurisdiction over XTO and the out of state putative plaintiffs' FLSA claims. Additionally, Plaintiffs have not and cannot allege facts sufficient to establish specific jurisdiction

over out of state putative plaintiffs and claims related to conduct wholly outside of this forum. Thus, the Court should dismiss Plaintiffs' overbroad FLSA collective allegations and claims which are wholly unrelated to New Mexico.

Respectfully submitted,

*/s/ Felicity A. Fowler*
Felicity A. Fowler
*Admitted Pro Hac Vice*
ffowler@mcginnislaw.com
**MCGINNIS LOCHRIDGE**
2200 Ross Avenue, Suite 4900E
Dallas, Texas 75201
Telephone: (214) 307-6961
Telecopier: (214) 307-6990

*/s/ Charlotte Lamont*
Charlotte Lamont
clamont@littler.com
**LITTLER MENDELSON, P.C.**
201 3rd St NW, Suite 500
Albuquerque, NM 87102
Telephone: (505) 944-9682
Telecopier: (505) 213-0415

David  B. Jordan
*Admitted Pro Hac Vice*
djordan@littler.com
Paige A. Cantrell
*Admitted Pro Hac Vice*
pcantrell@littler.com
**LITTLER MENDELSON, P.C.**
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 652-4785
Telecopier: (713) 583-2649

**ATTORNEYS FOR DEFENDANT
XTO ENERGY INC.**

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on the 9th day of October, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Clif Alexander
Austin W. Anderson
Lauren E. Braddy
**Anderson Alexander, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas
clif@a2xlaw.com
austin@a2xlaw.com
lauren@a2xlaw.com

Michael A. Josephson
Andrew W. Dunlap
**Josephson Dunlap Law Firm**
11 Greenway Plaza, Suite 3050
Houston, Texas
adunlap@mybackwages.com
mjosephson@mybackwages.com

Richard J. (Rex) Burch
**Bruckner Burch, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas
rburch@brucknerburch.com

*/s/ Charlotte Lamont*
Charlotte Lamont