## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORY BONE and LUIS CARRILLO, Individually and For Others Similarly Situated,<br><br>          Plaintiff,<br><br>v.<br><br>XTO ENERGY, INC.,<br>          Defendant. | C.A. No. 21-cv-1460-CFC<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

Dated: February 16, 2022

Of Counsel:

Michael A. Josephson
Andrew Dunlap
State Bar No. 24078444
JOSEPHSON DUNLAP LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
State Bar No. 24001807
BRUCKNER BURCH, PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788

Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market St. 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Fax: (713) 877-8065
rburch@brucknerburch.com

Clif Alexander
State Bar No. 24064805
Austin  Anderson
State Bar No. 24045189
ANDERSON ALEXANDER, PLLC
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (36) 452-1284
clif@a2xlaw.com
lauren@a2xlaw.com

*Attorneys for Plaintiffs Cory Bone and
Luis Carrillo*

## TABLE OF CONTENTS

Table of Contents .................................................................................................... i

1.  Introduction ..................................................................................................1

2.  Factual Background ......................................................................................3

  A.  XTO's Operations...............................................................................3

  B.  Plaintiffs and the Putatiuve Class Members Performed Similar Job Duties. ...............................................................................................5

  C.  XTO's Pay Policy Regarding Safety Consultants ...................................6

3.  Argument and Authorities...........................................................................10

  A.  Conditional Certification is Warranted When Workers are "Similarly Situated" ..........................................................................................10

  B.  The Third Circuit Uses the Two-Stage Ad Hoc Certification Process...11

  C.  Plaintiffs are Similarly Situated to Other Putative Class Members .......14

  D.  Classification as Independent Contractors Does Not Preclude Conditional Certification and is a Merits Based Determination.....................17

4.  Relief Sought..............................................................................................20

  A.  Courts Routinely Require the Production of Names, Addresses, E-Mail Addresses and Phone Numbers for the Notice Process .................................21

  B.  Email Notice is the Rule Not the Exception.........................................22

  C.  Notice Via Text Message Is a Reliable Method for Delivering Information About This Lawsuit......................................................................23

  D.  Reminder Notice is Appropriate. .......................................................23

  E.  Bone Requests the Court Authorize Him to Call Certain Potential Plaintiffs Whose Notice Is Returned Undeliverable   ...........................24

5.  Conclusion..................................................................................................24

## TABLE OF EXHIBITS

| Ex. | Document |
|---|---|
| 1 | Declaration of Cory Bone |
| 2 | Declaration of Larry Lyons |
| 3 | Declaration of Charles Carter |
| 4 | Declaration of Luis Carrillo |
| 5 | Declaration of Larry Howell |
| 6 | Declaration of Timothy Lunson |
| 7 | Bone pay record 1 |
| 8 | Bone pay record 2 |
| 9 | Bone pay record 3 |
| 10 | Mayo pay record 1 |
| 11 | Mayo pay record 2 |
| 12 | Carter pay record 1 |
| 13 | Carter pay record 2 |
| 14 | Lunson pay record |
| 15 | Proposed Notice/Consent Form |

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Archer v. Defs., Inc.*,
2018 WL 5962470 (D. Del. 2018) .................................................................. Passim

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
2015 WL 4240985 (S.D.N.Y. July 13, 2015) ...................................................... 23

*Bland v. Calfrac Well Servs. Corp.*,
2013 WL 4054594 (W.D. Pa. Aug. 12, 2013) ..................................................... 22

*Bowser v. Empyrean Servs., LLC*,
324 F.R.D. 346 (W.D. Pa. 2018) ........................................................................ 13

*Boyington v. Percheron Field Servs., LLC*,
2015 WL 3756330 (W.D. Pa. June 16, 2015) ..................................................... 18

*Cherichetti v. PJ Endicott Co.*,
906 F. Supp. 2d 312 (D. Del. 2012) .................................................................... 18

*Desio v. Russell Road Food & Beverage, LLC*,
2017 WL 4349220 (D. Nev. Sept. 29, 2017) ...................................................... 23

*Doe v. Banc, Jack & Joe, LLC*,
2020 WL 2832621 (D.N.J. June 1, 2020) ........................................................... 22

*Dunkel v. Warrior Energy Servs., Inc.*,
304 F.R.D. 193 (W.D. Pa. Dec. 23, 2014) .......................................................... 19

*Grayson v. K-Mart Corp.*,
79 F.3d 1086 (11th Cir. 1996) ............................................................................ 11

*Halle v. West Penn Allegheny Health Sys., Inc.*,
842 F.3d 215 (3d Cir. 2016) ............................................................................... 11

*Hewitt v. Helix Energy Solutions Grp., Inc.*,
15 F.4th 289 (5th Cir. 2021) ........................................................................ 1, 17

*Hickman v. TL Transportation, LLC*,
318 F. Supp. 3d 718 (E.D. Pa. 2018) ................................................................... 2

*Hively v. Allis-Chalmers Energy, Inc.*,
2013 WL 5936418 (W.D. Pa. Nov. 5, 2013) ...................................................... 13

*Hoffmann-La Roche v. Sperling*,
493 U.S. 165, 110 S.Ct. 482 ............................................................... 11, 14, 20

*Hughes v. Gulf Interstate Field Servs., Inc.*,
878 F.3d 183 (6th Cir. 2017) ............................................................................... 1

*In re Enterprise Rent-A-Car Employment Pracs. Litig.*,
2010 WL 3447783 (W.D. Pa. Aug. 13, 2010) .................................................... 14

*In re Penthouse Exec. Club Comp. Litig.*,

2010 WL 4340255,  (S.D..N.Y. Oct. 27, 2010) ...................................................... 23

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
    132 F. Supp. 3d 707 (D.S.C. 2015) .................................................................. 23

*Jaso v. Bulldog Connection Specialists LLC*,
    2015 WL 11144603 (S.D. Tex. Oct. 15, 2015) ........................................... 22, 24

*Justison v. McDonald's Corp.*,
    2010 WL 2382604 (D. Del. June 11, 2010) ...................................................... 13

*Kolasa v. BOS Sols., Inc.*,
    2018 WL 3370675 .................................................................................. 19, 22, 23

*McKee v. PetSmart, Inc.*,
    2013 WL 6440224 (D. Del. Dec. 9, 2013) ................................................... 12, 19

*Meals v. Keane Frac GP LLC, et a*l.,
    2017 WL 2445199 (W.D. Pa. June 6, 2017) ..................................................... 18

*Outlaw v. Secure Health, L.P.*,
    2012 WL 3150582 (M.D. Pa. Aug. 2, 2012) .................................................... 12

*Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    2018 WL 5874094 (D.N.J. 2018) ...................................................................... 23

*Rood v. R&R Express, Inc.*,
    2019 WL 5422945 (W.D. Pa. Oct. 23, 2019) ............................................. Passim

*Rosebar v. CSWS, LLC*,
    2020 WL 43015 (N.D. Ill. Jan. 3, 2020) ........................................................... 23

*Sanchez v. Santander Bank, N.A.*,
    2019 WL 6050738 (D.N.J. 2019) ...................................................................... 23

*Schneck v. Lawrence D. Brudy & Assoc., Inc.*,
    2016 WL 912299 (W.D. Pa. Mar. 10, 2016) .................................................... 22

*Spellman v. Am. Eagle Exp., Inc.*, No. CIV.A.,
    2011 WL 4102301 (E.D. Pa. 2011) ................................................................... 19

*Sperling v. Hoffmann-La Roche, Inc.*,
    118 F.R.D. 392 (D.N.J. Jan. 5, 1988) ............................................................... 14

*Symczyk v. Genesis HealthCare Corp.*,
    656 F.3d 189 (3d Cir. 2011) ....................................................................... 11, 12

*Talarico v. Public P'ships, LLC*,
    2018 WL 3972332 (E.D. Pa. Aug. 20, 2018) ................................................... 13

*Vargas v. Gen. Nutrition Ctr., Inc.*,
    2012 WL 3544733 (W.D. Pa. Aug. 16, 2012) .................................................. 14

*Vasil v. Dunham's Athleisure Corp.*,
    2015 WL 7871360 (W.D. Pa. Dec. 4, 2015) ..................................................... 14

*Verma v. 3001 Castor, Inc.*,
    2016 WL 6962522 (E.D. Pa. 2016) ................................................................... 19

*Villanueva-Bazaldua v. TruGreen Ltd. Partners*,
  479 F. Supp. 2d 411 (D. Del. 2007) ..................................................................... 12
*Zavala v. Wal Mart Stores Inc.*,
  691 F.3d 527 (3d Cir. 2012) ................................................................................ 12

**Statutes**

29 U.S.C. § 207 ........................................................................................................... 1
29 U.S.C. § 213 ......................................................................................................... 16
29 U.S.C. § 216(b) .................................................................................................... 10
29 U.S.C. §§ 201–19 ................................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 2

**Regulations**

29 C.F.R. § 541.604(b) ......................................................................................... 16, 17
29 C.F.R. § 778.112 ............................................................................................... 1, 16
29 C.F.R. §§ 541.100, .200, .300 ............................................................................... 17

## 1.   INTRODUCTION

Plaintiffs filed this hybrid collective and class action lawsuit pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"), and the New Mexico Minimum Wage Act, NMSA § 50 *et seq.*, to recover the unpaid overtime wages, liquidated damages, attorneys' fees, and costs that Defendant XTO Energy, Inc. ("XTO") owes them. *See* D.I. 1.[1] Plaintiffs and the Putative Class Members worked for XTO as Safety Consultants, regularly working over twelve (12) hours a day, and approximately seven (7) days a week.

XTO compensated Plaintiffs and the Putative Class Members for these long hours on a day rate basis, paying them a flat amount for all hours worked in a day, without overtime—even though compensating an employee solely on the basis of a day rate is a per se violation of the FLSA. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.112; *Hewitt v. Helix Energy Solutions Grp., Inc.*, 15 F.4th 289, 290-91, 297-98 (5th Cir. 2021) (a day rate alone can never meet the "salary basis" test as a "daily rate, by definition, is paid with regard to – and not 'regardless of' – 'the number of…days…worked'" and thus is not a "weekly guaranteed amount" (that is, a "salary")); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 187, 190 (6th

---

[1] In October 2021, Judge Johnson transferred this case from the District of New Mexico to this Court. *See* D.I. 61.

Cir. 2017) (same); *Hickman v. TL Transportation, LLC,* 318 F. Supp. 3d 718, 723 (E.D. Pa. 2018).

XTO avoided paying Plaintiffs and the Putative Class Members overtime by improperly classifying them as independent contractors and requiring these workers to utilize staffing companies. XTO's compensation plan violated the FLSA because XTO misclassified its Safety Consultants and paid them a flat day rate without paying them overtime.[2]

Because the FLSA permits an employee to bring an action to recover wages owed to "himself … and other employees similarly situated[,]" Plaintiffs respectfully request that the Court conditionally certify and send Court-approved notice to the below Putative Class Members pursuant to Section 216(b) of the FLSA:

> **All Safety Consultants employed by, or working on behalf of, XTO Energy, Inc. who were classified as independent contractors and paid a day rate with no overtime at any time during the past 3 years (Day Rate Safety Consultants).**

Plaintiffs request the Court authorize the issuance of Notice promptly so the Putative Class Members have the opportunity to join before their statute of limitations expires. "Statutes of limitations are not tolled for putative members of a FLSA class until they affirmatively 'opt-in' to the action." *Archer v. Defs., Inc.,* No.

---

[2] Plaintiffs have also brought claims arising under the New Mexico Minimum Wage Act, which qualifies as a Federal Rule of Civil Procedure 23 class action. Plaintiffs move only for conditional certification under FLSA section 216(b), and not Rule 23 class certification at this time.

CV 18-470-RGA, 2018 WL 5962470, at *1 (D. Del. 2018). To effectuate the purposes of the FLSA's Notice provisions and mitigate the loss of claims resulting from the expiration of the statute of limitations of the Putative Class Members, the Plaintiffs request the Court set an expedited briefing schedule. Because this issue was fully briefed before transfer (*See* D.I. 43, 50, 55), expedited consideration is appropriate.

## 2.   FACTUAL BACKGROUND

### A.   XTO's Operations

A subsidiary of ExxonMobil, XTO purports to be a "[l]eading natural gas and oil producer in North America, with expertise in developing tight gas, shale gas and unconventional oil resources."[3] XTO operates through six divisions in fourteen states in the United States and has holdings in every major shale play in the nation. *See id.*

---

[3]   *See*   https://www.xtoenergy.com/Operations/Operating-areas/XTO-Energy-operations-overview (last visited January 5, 2022).



*Id.* In order to maintain its status as an industry-leading oil and natural gas producer, XTO contracts with other companies to provide it with workers, including Safety Consultants, whose job is to conduct work on an oil and gas job site according to XTO's safety policies and procedures, using XTO's forms. The Safety Consultants work for XTO on a day-rate basis and are paid a flat sum for every day they worked, regardless of the number of hours worked in the day. *See* Ex. 1, Declaration ("Decl.") of Cory Bone, ¶¶ 9–10; Ex. 2, Decl. of Larry Lyons, ¶¶ 9–10; Ex. 3, Decl. of Charles Carter, ¶¶ 9–10; Ex. 4, Decl. of Luis Carrillo, ¶¶ 9–10; Ex. 5, Decl. of Larry Howell, ¶¶ 9–10; Ex. 6, Decl. of Timothy Lunson, ¶¶ 9–10. Those Safety Consultants who were misclassified as independent contractors and denied their earned overtime compensation make up the proposed collective in this matter.

**B.     Plaintiffs and the Putative Class Members Performed Similar Job Duties**

XTO's Safety Consultants are XTO's safety representatives present at XTO's oil and gas sites and are responsible for applying XTO's safety policies and procedures to location. *See* Exs. 1–6, ¶¶ 4–8. Generally, these duties include performing routine safety audits, completing safety inspection forms, and verifying compliance with XTO's safety protocols. *See id.* If a Safety Consultant notices something that could potentially violate XTO's safety policies, he or she would immediately notify their supervisor – an XTO employee – who would then direct their next steps. This is why XTO's Safety Consultants communicate daily with their XTO supervisors or other XTO representatives about compliance with safety procedures in place at XTO's job sites. *See id.*

XTO employs its Safety Consultants throughout all aspects of its field, non-office, operations.   In implementing XTO's safety policies and procedures, the Safety Consultants participate in safety meetings, either before beginning work for the day or after the completion of work. *See id.* at ¶ 4. Additionally, XTO's Safety Consultants participate in safety meetings before starting any new process at the job site. *See id* at ¶ 6. XTO Safety Consultants also attend operational meetings with XTO almost every day and submit written safety reports to XTO. *See* Exs. 1–6, ¶¶ 5, 8; Ex. 1, ¶ 21; Exs. 2-6, ¶ 22.

In sum, XTO's Safety Consultants function as XTO's on-site representative responsible for applying XTO's policies and procedures at its job sites and recording the safety practices of individuals at the sites. XTO's focus on safety and reliance on its Safety Consultants demonstrates that safety and the safety related duties performed by Safety Consultants constitutes a critical and integral part of its operations in the United States. *See:*

https://corporate.exxonmobil.com/Operations/Energy-technologies/Risk-management-and-safety.[4]

*Id.* (last visited January 5, 2022).

## C.    XTO's Pay Policy Regarding Safety Consultants

XTO, through its staffing companies, compensated its Safety Consultants according to the same compensation plan. That is, it strategically sourced Safety Consultants as independent contractors, intentionally misclassifying them, and paid

---

[4] XTO is a wholly owned subsidiary of ExxonMobil, and the above link is accessed directly from XTO's website: https://www.xtoenergy.com (last visited January 5, 2022).

them, through their staffing companies, a flat sum for every day worked, regardless of the number of hours worked in the day or week. *See* Exs. 1-6, ¶¶ 9–10; Ex. 1 ¶ 27; Exs. 2-6, ¶ 28. XTO typically scheduled its Safety Consultants to work on rotations of fourteen days on, followed by fourteen days off (a "hitch"). *See* Ex. 1, ¶¶ 22–23; Exs. 2–6, ¶¶ 23–24. The below pay records provide a clear picture of how XTO paid its Safety Consultants:

| Contractor Information | | Work Information | |
|---|---|---|---|
| complete all fields in this section | | complete all applicable fields in this section | |

| | | | |
|---|---|---|---|
| Your Name | Cory Bone | What company are you working for? | XTO |
| Your LLC (if applicable) | Bone Consulting LLC | What state is the work located in? | TX |
| Pay Period Start Date | 2/5/2019 | If New Mexico, what county is the work located in? | |
| Pay Period End Date | 2/19/2019 | | |

| Pay Rates | | | Supervisor Information | |
|---|---|---|---|---|
| Operating Rate | $650.00 | day | Name | Jeremy Graham |
| Travel Day Rate | | day | Email | jeremy_graham@xtoenergy.com |
| Per Diem | $ - | day | Phone | 817-647-5681 |
| Mileage (To/From Location) | $ 0.75 | mile | | |
| Mileage (In Field) | $ 1.00 | mile | | |

| | | | Wages | | |
|---|---|---|---|---|---|
| Date | Well Name | AFE # | Additional Information (Optional) | Rate Amount ($) | Description |
| 2/5/2019 | Bradford Trust A Unit 1 0344 SH | DO.2018.07254 | HP 428 Rig Visit | $ 650.00 | |
| 2/6/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Incident Report | $ 650.00 | |
| 2/7/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Rig Visit | $ 650.00 | |
| 2/8/2019 | Bradford Trust A Unit 1 0344 SH | DO.2018.07254 | HP 428 Critical Equipment Check | $ 650.00 | |
| 2/9/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Rig Visit | $ 650.00 | |
| 2/10/2019 | Bradford Trust A Unit 1 0344 SH | DO.2018.07254 | HP 428 Follow Up | $ 650.00 | |
| 2/11/2019 | Bradford Trust A Unit 1 0344 SH | DO.2018.07254 | HP 428 Rig Visit | $ 650.00 | |
| 2/12/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Rig Visit | $ 650.00 | |
| 2/13/2019 | Bradford Trust A Unit 1 0344 SH | DO.2018.07254 | HP 428 Rig Audit | $ 650.00 | |
| 2/14/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Follow Up | $ 650.00 | |
| 2/15/2019 | Bradford Trust A Unit 1 0344 SH | DO.2018.07254 | HP 428 Casing Audit | $ 650.00 | |
| 2/16/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Follow Up | $ 650.00 | |
| 2/17/2019 | John Braun A Unit 1 0114AH | DO.2016.03932 | HP 434 Rig Visit | $ 650.00 | |
| 2/18/2019 | Bradford Trust A Unit 1 0314 AH | DO.2018.07255 | HP 428 Casing Audit | $ 650.00 | |
| 2/19/2019 | Bradford Trust A Unit 1 0314 AH | DO.2018.07255 | HP 428 Rig Visit | $ 650.00 | |



**Earnings Summary**

*for office use only*

| | |
|---|---|
| Total Days Worked | 15 |
| Total Wages | $ 9,750.00 |
| Mileage Amount | $ 1,943.00 |
| Per Diem Amount | $ . |
| Additional Reimbursements | $ . |
| Total Reimbursements | $ 1,943.00 |
| Total Gross Earnings* | $11,693.00 |

*See* Ex. 7, Bone pay record.

| Contractor Information | Work Information |
|---|---|
| complete all fields in this section | complete all applicable fields in this section |

| | | |
|---|---|---|
| Your Name | Cory Bone | |
| Your LLC (if applicable) | Bone Consulting LLC | |
| Pay Period Start Date | 4/21/2019 | |
| Pay Period End Date | 5/5/2019 | |

| What company are you working for? | XTO |
|---|---|
| What state is the work located in? | TX |
| If New Mexico, what county is the work located in? | |

**Pay Rates**

| | | |
|---|---|---|
| Operating Rate | $850.00 | day |
| Travel Day Rate | Day Rate (2) | day |
| Per Diem | | day |
| Mileage | $ 1.100 | mile |

**Supervisor Information**

| | |
|---|---|
| Name | Luke Williams |
| Email | luke_williams@xtoenergy.com |
| Phone | 432-894-4521 |

| | | | | | Mileage | |
|---|---|---|---|---|---|---|
| **Date** | **Service Provided** | **AFE #** | **Additional Information (Optional)** | **Rate Amount ($)** | **Description** | |
| 4/21/2019 | Travel Day | | | $ 850.00 | | |
| 4/22/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/23/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/24/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/25/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/26/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/27/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/28/2019 | | | | | | |
| 4/29/2019 | | | WWI Site Safety | $ 850.00 | | |
| 4/30/2019 | | | WWI Site Safety | $ 850.00 | | |
| 5/1/2019 | | | WWI Site Safety | $ 850.00 | | |
| 5/2/2019 | | | WWI Site Safety | $ 850.00 | | |
| 5/3/2019 | | | WWI Site Safety | $ 850.00 | | |
| 5/4/2019 | | | WWI Site Safety | $ 850.00 | | |
| 5/5/2019 | Travel Day | | | $ 850.00 | | |



See Ex. 8, Bone pay record.

# Invoice

| Name | White Horse Consulting, Inc. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Address | PO Box 9672 | | Supervisor: Jeremy Graham | | Safety Consultant: Cory Bone | | Invoice # | | | |
| | Midland, TX 79705 | | | | | | | | | |

| Date | Lease & Well # | AFE/Code | Activity Summary | Travel Miles | Work Miles | Meals/Phone | Day Rate | T mileage | W mileage | Line Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/16/2018 | Travel Day, Visited HP 434 | | HP 434 Rig Skid | 374 | 43 | | | 280.50 | 43.00 | 323.50 |
| 10/17/2018 | Nobles 3111AH | 1704016 | Critical Equip. Check HP 428 | | 130 | | 600.00 | 0.00 | 130.00 | 730.00 |
| 10/18/2018 | Nobles 3111AH | 1704016 | HP 428 Safety Meeting | | 106 | | 600.00 | 0.00 | 106.00 | 706.00 |
| 10/19/2018 | ZHB U1 4814 4814AH | 1602061 | HP 434 Casing Audit | | 145 | | 600.00 | 0.00 | 145.00 | 745.00 |
| 10/20/2018 | Nobles 3111AH | 1704016 | HP 428 Casing Audit | | 138 | | 600.00 | 0.00 | 138.00 | 738.00 |
| 10/21/2018 | ZHB U1 4814 4814AH | 1602061 | HP 434 Rig Visit | | 133 | | 600.00 | 0.00 | 133.00 | 733.00 |
| 10/22/2018 | Nobles 3111AH | 1704016 | HP 428 Safety Meeting | | 126 | | 600.00 | 0.00 | 126.00 | 726.00 |
| 10/23/2018 | ZHB U1 4814 4814AH | 1602061 | HP 434 Casing Audit | | 117 | | 600.00 | 0.00 | 117.00 | 717.00 |
| 10/24/2018 | ZHB U1 4814 4814AH | 1602061 | Incident Report HP 434 | | 156 | | 600.00 | 0.00 | 156.00 | 756.00 |
| 10/25/2018 | Nobles 3111AH | 1704016 | Critical Equip. Check HP 428 | | 159 | | 600.00 | 0.00 | 159.00 | 759.00 |
| 10/26/2018 | ZHB U1 4814 4814AH | 1602061 | HP 434 Casing Audit | | 91 | | 600.00 | 0.00 | 91.00 | 691.00 |
| 10/27/2018 | Nobles 3111AH | 1704016 | HP 428 Monthly Audit | | 97 | | 600.00 | 0.00 | 97.00 | 697.00 |
| 10/28/2018 | ZHB U1 4814 4814AH | 1602061 | HP 434 Monthly Audit | | 108 | | 600.00 | 0.00 | 108.00 | 708.00 |
| 10/29/2018 | ZHB U1 4814 4814AH | 1602061 | Critical Equip. Check HP 434 | | 118 | | 600.00 | 0.00 | 118.00 | 718.00 |
| 10/30/2018 | Travel Day, Visited HP 428 | 1704016 | | 376 | 53 | | 600.00 | 282.00 | 53.00 | 935.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | | | | 0.00 | 0.00 | 0.00 |
| | | | | | 750 | 1720 | | 8400.00 | 562.50 | 1720.00 | 10682.50 |
| | | | | | | | | | TOTAL INVOICE $ | 10682.50 |

See Ex. 9, Bone pay record; see also Ex. 10-11, Mayo pay records; Ex. 12-13, Carter

pay records; Ex. 14, Lunson pay record.

While on their hitch, XTO's Safety Consultants were on call twenty-four hours a day, and seven days a week. It was not unusual for the Safety Consultants to work beyond their 12-hour workday and into the next shift as well, typically working eighty-four hours a week, and frequently more. *See* Exs. 1-6, ¶¶ 12-13.

As a result of XTO's classification and pay policy and practice described above, Plaintiffs and the Putative Class Members were not compensated for all hours worked, including all hours worked in excess of forty in a workweek at the rates required by the FLSA. XTO's policy and practice applied (and continues to apply) to Plaintiffs and the Putative Class Members and evinces XTO's systemic failure to comply with the overtime requirements of the FLSA.

Through the declaration of Plaintiffs Bone and Carrillo and four Opt-In Plaintiffs, as well as the pleadings on file, Plaintiffs have put forth sufficient evidence that they, as XTO's Safety Consultants, are similarly situated such that notice should issue to the Putative Class Members to advise them of this lawsuit and provide them an opportunity to join.

**3.   ARGUMENT AND AUTHORITIES**

**A.   Conditional Certification is Warranted When Workers are "Similarly Situated"**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see also Halle v. West Penn*

10

*Allegheny Health Sys., Inc.*, 842 F.3d 215, 224 (3d Cir. 2016); *Archer*, 2018 WL 5962470, at *1. The plaintiff's claims need not be **identical** to the potential Opt-In Plaintiffs, but need only be **similar**. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996).

As the Supreme Court has explained, the FLSA's collective action mechanism lowers litigation costs for individual plaintiffs and decreases the burden on the courts through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170; 110 S.Ct. 482. "These benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.*

## B.   The Third Circuit Uses the Two-Stage Ad Hoc Certification Process

The Third Circuit addressed the lenient burden a plaintiff must meet for the Court to authorize notice to be sent to similarly situated individuals:

> Under the 'modest factual showing' standard, a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011), rev'd, 569 U.S. 66, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013) (internal citations omitted); *see also Archer,* 2018 WL 5962470, at *2 (a "proposed class is similarly situated if

there are substantial allegations that the putative class members were together the victims of a single decision, policy or plan") (quotes and cites omitted); *Rood v. R&R Express, Inc*., No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. 2019) ("A plaintiff's burden at the first step is light"). If the plaintiff makes this modest factual showing, "the court will conditionally certify the collective action for the purposes of notice and pretrial discovery." *Symczyk*, 656 F.3d at 192; *see also McKee v. PetSmart, Inc.,* No. CV 12-1117-SLR, 2013 WL 6440224, at *3 (D. Del. 2013) (certifying class, noting the "modest factual showing required for the proposed recipients [of notice] to be similarly situated*"*); *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 414–15 (D. Del. 2007) (at the notice stage, courts "generally examine the pleadings and affidavits of the parties").

Only at stage two—after the parties have completed discovery and the class has been identified—should "the District Court determine 'whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs.'" *Zavala v. Wal Mart Stores Inc*., 691 F.3d 527, 537 (3d Cir. 2012). During this second stage, the Court has the benefit of a "much thicker record" to enable the court to make a final decision about certification. *Symczyk*, 656 F.3d at 193. Consistent with these principles, courts are "careful not to delve into the merits of the case or determine issues of credibility." *Outlaw v. Secure Health, L.P.*, No. 3:11-cv-602, 2012 WL 3150582, at *3 (M.D. Pa. 2012); *see also Archer,* 2018 WL 5962470, at *2

("resolution of factual disputes and merit determinations are not appropriate at the conditional certification stage").

"Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete." *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352 (W.D. Pa. 2018). Similarly, "[t]hat potential plaintiffs held different jobs, in different department, in different locations does not preclude conditional certification because all were subjected to the same allegedly unlawful policy." *Id.* at 352-53 (collecting cases). Indeed, "[a]ny other **individualized issues** related to whether the putative class members were 'similarly situated' likewise **cannot be resolved at this stage of the certification process**." *Rood*, 2019 WL 5422945, at *4 (emphasis added) (collecting cases); *see also Archer*, 2018 WL 5962470, at *3 ("courts in this Circuit regularly resolve issues of individualized inquiries at stage two of the certification process" … "with the benefit of a full factual record"); *Justison v. McDonald's Corp.*, No. C.A.08-448-JJF, 2010 WL 2382604, at *2 (D. Del. 2010) ("district courts in the Third Circuit have developed a two-stage test" to determine similarity).

Simply, "[a]t this stage, the Court will not reach the merits of [Bone's] FLSA claims or make conclusive findings." *Hively v. Allis-Chalmers Energy, Inc.,* No. 13-106, 2013 WL 5936418, at *6 (W.D. Pa. 2013); *see also Talarico v. Public P'ships, LLC,* 2018 WL 3972332, at *6 (E.D. Pa. 2018); *In re Enterprise Rent-A-Car*

13

*Employment Pracs. Litig.*, 2010 WL 3447783, at *21 (W.D. Pa. 2010) ("the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations"); *Rood*, 2019 WL 5422945, at *4 (collecting cases). "Although Defendant [may] argue that dissimilarities between potential opt-in plaintiffs are relevant to the issue of whether they are similarly situated, at this preliminary stage of the case, these differences among proposed class members … do not undermine Plaintiff's modest factual showing." *Vargas v. Gen. Nutrition Ctr., Inc.*, 2012 WL 3544733, at *8 (W.D. Pa. 2012).

Ultimately, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-La Roche, Inc.,* 118 F.R.D. 392, 406 (D.N.J. 1988). Once the notice and opt-in period are complete, the court will have the benefit of knowing the actual makeup of the class. Thus, early notice helps courts to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche*, 493 U.S. at 172.

## C.    Plaintiffs are Similarly Situated to Other Putative Class Members

The grant of conditional certification requires nothing more than a modest factual showing demonstrating that the Putative Class Members together were victims of a common policy or plan that violated the law. *Vasil v. Dunham's Athleisure Corp.*, No. 14-CV-690, 2015 WL 7871360, at *2 (W.D. Pa. 2015)

(granting certification because of "some evidence that a number of employees working under a facial classification of exempt employees … might have been required to work under circumstances that violated the FLSA and in a manner that will support a finding that the employees were similarly situated"). Although the Parties have yet to conduct extensive discovery, the record already contains substantial allegations that Plaintiffs and the Putative Class Members are victims of a single pay plan. Plaintiffs and the Putative Class Members are similarly situated because they all:

- were misclassified by XTO as independent contractors;
- were paid on a day-rate basis;
- performed the same or similar job duties;
- were not paid overtime for hours worked in excess of 40 hours in any given week;
- worked at locations assigned by XTO;
- worked shifts assigned by XTO; and
- were subject to the same policies and procedures promulgated by XTO.

*See, generally* D.I. 1; Exs. 1 – 6.

Under the applicable law, Plaintiffs clearly meet the lenient burden and conditional certification is appropriate based on the detailed pleadings and the declarations on file in support of this motion. *See generally* D.I. 1; Exs. 1–6. XTO's uniform and systematic company-wide corporate pay policy applies as equally to Plaintiffs as it does to all of the Safety Consultants (Putative Class Members) across the company. *Id.* These substantial allegations more than illustrate a company-wide

policy or plan applicable to Plaintiffs and the Putative Class Members and thus support conditional certification.

XTO's day rate policy failed to compensate Safety Consultants for overtime worked, making Plaintiffs and the Putative Class Members similarly situated under the day rate plan. The Department of Labor regulations concerning day rate plans require employers pay day rate employees for overtime worked. 29 C.F.R. § 778.112. Regulation 778.112 states:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

*Id.* (emphasis added). Failure to pay overtime compensation on a day rate plan for hours worked over forty in a workweek is a violation of the FLSA.

XTO may claim that failure to pay overtime for day rate plans is not a violation of the FLSA if an exemption to the overtime requirement applies. *See* 29 U.S.C. § 213 (stating employers are not required to pay an employee overtime if she is covered by one of a handful of exemptions); 29 C.F.R. § 541.604(b) (stating day rate plans may satisfy the salary basis test if a minimum guarantee is paid as a salary). However, this argument does not preclude conditional certification since XTO cannot show the positions satisfy the salary basis test required for the exemptions.

16

*See* 29 C.F.R. §§ 541.100, .200, .300 (requiring salary basis test for executive, administrative, and professional exemptions). Because the Safety Consultant were paid a **day rate**—and only for the days they worked—without a guaranteed salary or overtime, regardless of the staffing company that sourced them or the location worked (*see, generally*, D.I. 25; Ex. 1-6 ¶¶ 9-10; Ex. 7-14), XTO's pay plan violates the FLSA. *See, e.g., Hewitt*, 15 F.4th at 290-91, 297-98.

For a day rate compensation plan to constitute a salary under the test, it must include a "guarantee of at least the minimum weekly-required amount paid on a salary basis," and the guaranteed amount must be reasonably related to the amount employees actually earn on a weekly basis. 29 C.F.R. § 541.604(b). Here, Plaintiffs and the Putative Class Members only received compensation for days worked and did not receive any weekly guarantee. *See* Exs. 1-6, ¶¶ 9-10.

Consequently, this Court should authorize notice to the Putative Class Members and allow Plaintiffs to distribute the Notice/Consent Forms (attached hereto as Exhibit 10) to the Putative Class Members. Given the weight of evidence supporting conditional certification, and in light of XTO's blatant violations of the FLSA, the issuance of immediate Court-approved notice to the Putative Class Members is both appropriate and within this Court's discretion.

### D.   Classification as Independent Contractors Does Not Preclude Conditional Certification and is a Merits Based Determination

Plaintiffs anticipate XTO will contest conditional certification by arguing the merits[5] of this FLSA violation (i.e., that Plaintiffs do not meet the requirements of the economic realities test[6] to qualify as an employee of XTO and are exempt from overtime pay) instead of focusing on whether Plaintiffs and the Putative Class Members are "similarly situated." These arguments improperly place the cart before the horse.

Indeed, because extensive discovery has not yet occurred at the notice stage, courts do not review the underlying merits of the action in deciding whether to conditionally certify a class. *See, e.g., Rood*, 2019 WL 5422945, at *3-4; *Meals v. Keane Frac GP LLC, et a*l., No. 16-1674, 2017 WL 2445199, at *5 (W.D. Pa. 2017). As these cases demonstrate, courts in this Circuit have made clear that alleged exemption defenses to not preclude conditional certification. *Id.*; *see also Boyington*

---

[5] A disagreement about the merits of Plaintiffs' claims is not grounds for denying conditional certification. Courts in this Circuit regularly recognize that there is an inadequate record at the certification stage to address merits-based issues and that these factors go to the ultimate issues—not whether notice should issue under the lenient similarly situated analysis. *See, e.g., Rood*, 2019 WL 5422945.

[6] The "Third Circuit has developed the following six-factor [economic realities] test to determine whether a plaintiff is an 'employee' under the FLSA: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending on his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business." *Cherichetti v. PJ Endicott Co.,* 906 F. Supp. 2d 312, 316 (D. Del. 2012).

*v. Percheron Field Servs., LLC*, No. 14-90, 2015 WL 3756330, at *3 (W.D. Pa. 2015). This is because Plaintiffs need only show three things for conditional certification: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way. *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 199 (W.D. Pa. 2014).

Courts in this District certify collective actions based on a uniform pay practice. *See, e.g., Archer,* 2018 WL 5962470, at *2, 3 ("all current and former Security Advisors employed by [Defendant]" who were "compensated according to the same compensation structure"); *see also McKee,* 2013 WL 6440224, at *1, 3. Third Circuit courts routinely certify classes of workers classified as independent contractors and paid under the same **day rate**. *See Stewart v. Anchor Drilling Fluids USA, Inc*., No. 2:16-1372, ECF No. 49 (W.D. Pa. 2017)  ("[a]ll mud engineers / drilling fluid engineers"); *Kolasa v. BOS Sols., Inc.,* No. CV 17-1087, 2018 WL 3370675, at *7 (W.D. Pa. 2018)*, adopted,* 2018 WL 3361269 (W.D. Pa. 2018) ("all current and former solids control technicians") (cleaned up); *Spellman v. Am. Eagle Exp., Inc*., No. CIV.A. 10-1764, 2011 WL 4102301, at *1 (E.D. Pa. 2011) (delivery drivers); *Verma v. 3001 Castor, Inc.,* No. CV 13-3034, 2016 WL 6962522, at *6 (E.D. Pa. 2016) (exotic dancers). Likewise, this Court should certify Bone's proposed class of all Safety Consultants who were misclassified as independent contractor and paid a day rate for the work they performed on behalf of XTO.

4.    **RELIEF SOUGHT**

Plaintiffs seek the issuance of notice to all Putative Class Members and the disclosure of the names and contact information (including the addresses, e-mail addresses, phone numbers, and dates of employment) of all current and former Safety Consultants who worked for XTO at any time within the last three years. The benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche,* 493 U.S. at 170.

To facilitate the notice process and preserve the rights of those who have not yet opted-in (or learned of this lawsuit), Plaintiffs have attached a proposed Notice and Consent Form to be approved by the Court. *See* Ex. 15. These forms are based on various Notice and Consent forms previously approved by courts within the Third Circuit, though they have been modified for this particular case. Additionally, Plaintiffs seek an Order from this Court adopting the Notice Schedule identified below:

| DEADLINE | SUBJECT |
|---|---|
| **7 Days from Order Approving Notice to Putative Class Members** | XTO to obtain and disclose the names, addresses, e-mail addresses, telephone/cell phone numbers, and dates of employment of the Putative Class |

| | |
|---|---|
| | Members in a usable electronic format, such as Excel. |
| **21 Days from Order Approving Notice to Putative Class Members** | Plaintiff's counsel shall send by mail, e-mail, and text message the Court-approved Notice and Consent Form to the Putative Class Members. |
| **45 Days from Notice Being Sent to Putative Class Members** | Plaintiff's Counsel is authorized to send by mail, e-mail and text-message a second identical copy of the Notice/Consent Form to the Putative Class Members reminding them of the deadline for the submission of the Consent forms. |
| **90 Days from Notice Being Sent to Putative Class Members** | The Putative Class Members shall have 90 days to return their signed Consent forms for filing with the Court. |

### A.   Courts Routinely Require the Production of Names, Addresses, E-Mail Addresses and Phone Numbers for the Notice Process

Plaintiffs respectfully request that the Court order XTO to obtain and provide the names, current or last known addresses, e-mail addresses, phone numbers, cell phone numbers, and dates of employment for current and former Safety Consultants fitting the description of the conditionally certified class within seven days of the entry of an Order granting conditional certification. Courts throughout the Third Circuit routinely require defendants to produce the requested information. *See, e.g.,*

*Kolasa*, 2018 WL 3370675, at *7 (ordering the production of names, mailing addresses and email addresses); *Schneck v. Lawrence D. Brudy & Assocs., Inc*., No. CA 15-1058, 2016 WL 912299, at *1 (W.D. Pa. 2016); *Doe v. Banc, Jack & Joe, LLC*, No. 17CV03843KSHCLW, 2020 WL 2832621, at *6 (D.N.J. 2020).

### B.     Email Notice is the Rule Not the Exception.

Courts in this Circuit and elsewhere have come to recognize the importance of email notice. *Kolasa*, 2018 WL 3370675, at *7 (approving notice via mail and email because "the transient nature of work performed by the [workers] and the reality that they may be away from their homes for extended periods of time"); *Bland v. Calfrac Well Servs. Corp*., 2013 WL 4054594, at *3 (W.D. Pa. 2013) (allowing the dissemination of notice by email, because the putative plaintiffs worked in "remote locations," which could "have the effect of severely delaying or unnecessarily jeopardizing their receipt of the opt-in Notice and thus their ability … to join th[e] collective action"); *see also Doe*, 2020 WL 2832621, at *6 (agreeing that additional forms of notice, including email and reminder notice were "necessary" because potential class members were transient). *See also Kolasa*, 2018 WL 3370675, at *7; *Jaso v. Bulldog Connection Specialists LLC*, 2015 WL 11144603, at *5 (S.D. Tex. 2015); Ex. 1 at ¶¶ 12-14; Ex. 2 at ¶¶ 12-14; Ex. 3 at ¶¶ 12-14. Accordingly, the Court should authorize notice via email.

**C.**     **Notice Via Text Message Is a Reliable Method for Delivering Information About This Lawsuit.**

Courts across the country have recognized that "[c]ommon sense dictates that the transitory nature of [potential plaintiffs'] jobs makes notice via text message entirely appropriate." *See Rosebar v. CSWS, LLC*, 2020 WL 43015, at *3 (N.D. Ill. 2020) (text-message notice is appropriate if workforce is transitory); *Desio v. Russell Road Food & Beverage, LLC*, 2017 WL 4349220, at *5 (D. Nev. 2017) (same); *see also Bhumithanarn v. 22 Noodle Mkt. Cor*p., 2015 WL 4240985, at *5 (S.D.N.Y. 2015); *Irvine v. Destination Wild Dunes Mgmt., Inc*., 132 F. Supp. 3d 707, 711 (D.S.C. 2015). Accordingly, the Court should authorize text message notice.

**D.**     **Reminder Notice is Appropriate.**

Bone requests an identical reminder notice by mail, email, and text message half-way through the 60-day opt-in period. Courts in this Circuit recognize reminder notices are beneficial for potential plaintiffs who work away from home. *See, e.g., Kolasa*, 2018 WL 3370675, at *7 (authorizing reminder notice via mail and email); *Sanchez v. Santander Bank, N.A*., No. CV175775PGSDEA, 2019 WL 6050738, at *3 (D.N.J. 2019) (same); *Porter v. Merrill Lynch Pierce Fenner & Smith, Inc*., No. CV178043FLWTJB, 2018 WL 5874094, at *5 (D.N.J. 2018) (same). A reminder notice would ensure these workers have an opportunity to make an informed decision about whether to join this case. Ex. 1 at ¶¶ 12-14; Ex. 2 at ¶¶ 12-14; Ex. 3 at ¶¶ 12-14.

### E.     Bone Requests the Court Authorize Him to Call Certain Potential Plaintiffs Whose Notice Is Returned Undeliverable.

Bone also requests permission to call certain potential plaintiffs to obtain accurate contact information if their notice is returned as undeliverable. *See McDonald v. Encompass Services, LLC*, No. 2:16-CV-01203-LPL, Doc. 29 (W.D. Pa. 2016) (granting follow-up by telephone contact, posting of notices, email and mail delivery, and reminders). "[T]elephone numbers … provide a more stable means of contacting a person who has moved than a mailing address." *Jaso*, 2015 WL 11144603, at *6.

## 5.     CONCLUSION

Plaintiffs have more than satisfied their minimal burden to demonstrate other similarly situated individuals exist and to establish notice should issue to the Putative Class Members. In order to facilitate the purposes of the FLSA's collective action provisions, Plaintiffs respectfully request that the Court grant this Motion and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that judicially-approved notice be sent to all Putative Class Members; (3) approve the form and content of Plaintiffs' proposed judicial notice and reminder notice attached as Exhibit 10; (4) order XTO to produce to Plaintiffs' counsel the contact information (including the names, addresses, telephone numbers, cell phone numbers, e-mail addresses, and dates of employment) for each Putative Class Member in a usable electronic format; (5) authorize a 90-day notice period for

Putative Class Members to join the case; (6) approve the Notice Schedule described above; (7) authorize notice to be disseminated via First Class mail, e-mail, and text-message to the Putative Class Members; (8) authorize a Reminder Notice to be sent halfway through the opt-in period; and (9) allow Putative Class Members to execute their consent forms on-line through an electronic signature service.

Dated: February 16, 2022

Of Counsel:

Michael A. Josephson
Andrew Dunlap
State Bar No. 24078444
JOSEPHSON DUNLAP LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
State Bar No. 24001807
BRUCKNER BURCH, PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Clif Alexander
State Bar No. 24064805
Austin  Anderson
State Bar No. 24045189
ANDERSON ALEXANDER, PLLC
819 North Upper Broadway

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St. 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (36) 452-1284
clif@a2xlaw.com
lauren@a2xlaw.com                    *Attorneys for Plaintiffs Cory Bone and*
                                     *Luis Carrillo*

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's March 2, 2020 form Scheduling Order for All Cases.  The text of this brief, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 4,995 words, excluding the case caption, signature block, table of contents and table of authorities.

/s/ Michael J. Farnan
Michael J. Farnan (Bar No. 5165)

Dated: February 16, 2022