## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORY BONE and LUIS CARRILLO, Individually and For Others Similarly Situated, | C.A. No. 21-cv-1460-VAC-JLH |
| | Jury Trial Demanded FLSA |
| v. | Collective Action |
| XTO ENERGY, INC., | |

## BONE'S OPPOSITION TO RUSCO AND ALLY'S
## MOTION TO INTERVENE (D.I. 96-97)

Dated: June 24, 2022

Of Counsel:

Michael A. Josephson
Andrew W. Dunlap
Carl A. Fitz
JOSEPHSON DUNLAP LAW FIRM
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
State Bar No. 24001807
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Sue L. Robinson (Bar No. 100658)
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market St. 12th Floor Wilmington,
DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Clif Alexander
Austin Anderson
ANDERSON ALEXANDER, PLLC
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (36) 452-1284
clif@a2xlaw.com
lauren@a2xlaw.com

*Attorneys for Plaintiffs Cory Bone and Luis Carrillo*

## TABLE OF CONTENTS

Table of Contents ............................................................................................................ i

Table of Authorities ......................................................................................................... ii

A.   Nature and Stage of Proceedings. .............................................................................1

B.   Summary of Argument. .............................................................................................1

C.   Concice Statement of Facts........................................................................................2

D.   Rusco's Motion to Intervene to Force Plaintiffs to Arbitrate with XTO Must Be Denied. ........2

   1.   Standards for Intervention ....................................................................................2

   2.   RUSCO Cannot Intervene as a Matter of Right. ....................................................3

       a.   RUSCO's Motion to Intervene is Untimely.....................................................3

       b.   RUSCO Does Not Have a Sufficient Interest in the Litigation. ..........................6

          i.   RUSCO Cannot Enforce the Arbitration Agreements..................................6

          ii.   RUSCO's Classification Practices are Not at Issue.. ...................................7

       c.   Resolving These Claims Will Not Impair RUSCO's Alleged Interests. ............11

       d.   Any Alleged "Interest" is Adequately Represented by XTO. .............................12

   3.   Permissive Intervention is Inappropriate..............................................................14

E.   RUSCO's Request for Attorneys' Fees Must Be Denied .............................................15

F.   Conclusion...............................................................................................................15

### TABLE OF AUTHORITIES

Cases                                                                        Page(s)

*Anadarko Petroleum Corp.*,
   2022 WL 2045627 (5th Cir. June 7, 2022) ...............................................................4
*Abramson v. Agentra*, LLC,
   2020 WL 7335897 (W.D. Pa. Dec. 14, 2020) .................................................. 3, 12
*Acosta v. Paragon Contractors Corp.*,
   884 F.3d 1225 (10th Cir. 2018) ......................................................................... 10
*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
   2005 WL 8179913 (D.N.J. July 13, 2005) ......................................................... 12
*Arthur G. McKee & Co. v. Gulf & W. Indus., Inc.*,
   52 F.R.D. 332 (D. Del. 1971)................................................................................5
*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*,
   701 F.3d 938 (3d Cir. 2012)............................................................................ 5, 6
*Benjamin v. Dep't of Pub. Welfare of Pa.*,
   432 Fed. App'x 94 (3d Cir. 2011) ........................................................................3
*Berger v. N. Carolina State Conf. of the NAACP*, No.,
   2022 WL 2251306 (U.S. June 23, 2022).....................................................12, 13
*Brody ex rel. Sugzdinis v. Spang*,
   957 F.2d 1108 (3d Cir. 1992) ............................................................................ 11
*Chao v. Barbeque Ventures, LLC*,
   547 F.3d 938 (8th Cir. 2008) ........................................................................ 8, 15
*Chao v. Westside Drywall, Inc.*,
   709 F.Supp.2d 1037 (D. Or. 2010) ......................................................................8
*City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*,
   79 F.3d 1038 (10th Cir. 1996) .......................................................................... 11
*Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
   2017 WL 1376298 (W.D. Pa. Apr. 17, 2017).......................................................5
*Columbian Fin. Corp. v. BancInsure, Inc.*,
   650 F.3d 1372 (10th Cir. 2011) ...........................................................................9
*Commonwealth of Pennsylvania v. President United States of America*,
   888 F.3d 52 (3d Cir. 2018)...........................................................................11, 12
*Cty., Utah v. United States*,
   503 F.3d 1163 (10th Cir. 2007) ........................................................................ 14
*Curry v. M-I, LLC*,
   2020 WL 486790 (S.D. Tex. Jan. 30, 2020) ........................................................8
*Dole v. Snell*,
   845 F.2d 802 (10th Cir. 1989) .............................................................................9
*Dowd v. Directv, LLC*,
   2016 WL 28866 (E.D. Mich. Jan. 4, 2016) ..........................................................8
*Evans v. Buchanan*,
   130 F.R.D. 306 (D. Del. 1990) .......................................................................... 13
*Flynn v. Sanchez Oil & Gas Corp.*,
   2019 WL 6606530,n.1 (W.D. Tex. Dec. 5, 2019).................................................8
*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) ..............................................................................................9

*Haymond v. Lundy*,
  2002 WL 31149289 (E.D. Pa. Sept. 26, 2002) ...................................................5

*Hendricks v. Clyne*,
  2019 WL 918607 (V.I. Super. Feb. 20, 2019) .................................................2

*In re Banks*,
  222 Fed. App'x 103 (3d Cir. 2006) .................................................................12

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005) ....................................................................3, 12

*In re Fine Paper Antitrust Litig.*,
  695 F.2d 494 (3d Cir. 1982) .........................................................................3

*Izzio v. Century Partners Golf Mgmt., L.P.*,
  2015 WL 5472845 (N.D. Tex. Sept. 15, 2015) ............................................13

*Jet Traders Inv. Corp. v. Tekair, Ltd.*,
  89 F.R.D. 560 (D. Del. 1981) ......................................................................11

*Joaquin v. Coliseum, Inc.*,
  2016 WL 3906820 (W.D. Tex. July 13, 2016) ...............................................8

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) .......................................................................10

*Koon v. United States*,
  518 U.S. 81 (1996) ......................................................................................13

*Lewis v. Contl. Bank Corp.*,
  494 U.S. 472 (1990) ......................................................................................8

*Lincoln Prop. Co. v. Roche*,
  546 U.S. 81 (2005) ........................................................................................8

*Marquez v. El Portal, Inc.*,
  2017 WL 3224475 (N.D. Ala. Jan. 12, 2017) ................................................8

*Martin v. Selker Bros. Inc.*,
  949 F.2d 1286 (3d Cir. 1991) .......................................................................9

*Martin v. Tap Rock Resources, LLC*,
  2022 WL 278874 (D. N.M. Jan. 31, 2022) .....................................................7

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) ....................................................................2, 3, 6

*Northwest Forest Resource Council v. Glickman*,
  82 F.3d 825 (9th Cir.1996) ..........................................................................13

*Powers v. Emcon Assoc., Inc.*,
  2017 WL 4075766 (D. Colo. Sept. 14, 2017) ................................................9

*PPL Energyplus, LLC v. Solomon*,
  2011 WL 13128622 (D.N.J. July 19, 2011) ...................................................2

*Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan*,
  78 F.Supp.2d 1142 (D. Colo. 1999) ..............................................................8

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
  368 F.Supp.3d 152 (D. Mass. 2019) .........................................................8, 9

*Sabo v. Reo Prop. Mgmt., LLC*,
  2015 WL 1964606 (M.D. Pa. Apr. 30, 2015) ................................................9

*Samnorwood Indep. Sch. Dist. v. Texas Educ. Agency*,
  533 F.3d 258 (5th Cir. 2008) .........................................................................7

*Statewide Masonry v. Anderson*,
  511 Fed. App'x 801 (10th Cir. 2013) ...........................................................11

*Temple v. Synthes Corp.*,
  498 U.S. 5 (1990)............................................................................................8
*Thompson v. Real Estate Mortgage Network*,
  748 F.3d 142 (3d Cir. 2014)............................................................................9
*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
  137 S.Ct. 1645 (2017)......................................................................................6
*United States v. Alcan Aluminum, Inc.*,
  25 F.3d 1174 (3d Cir.1994)..............................................................................5

## Statutes

29 U.S.C. §§ 201–19 ..........................................................................................1

## Rules

Fed. R. Civ. P. 24.............................................................................................. 11
Fed. R. Civ. P. 24(a)(2) ................................................................................. 2, 6
Fed. R. Civ. P. 24(b)..................................................................................... 3, 14
Fed. R. Civ. P. 24(b)(3)......................................................................................3
Fed. R. Civ. P. 24(c) ....................................................................................... 15
Rule 24(a) ...........................................................................................................6

## Regulations

29 C.F.R. § 791.2 ................................................................................................8

## Other Authorities

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1916 (3d ed. 2017).....5

## A.    NATURE AND STAGE OF PROCEEDINGS.

This case involves a dispute between **XTO Energy, Inc.** (XTO) and oilfield workers it classified as independent contractors and paid a day rate. *See* D.I. 1. In July 2020, Bone sued XTO for failing to pay its Safety Consultants overtime as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA") and the New Mexico Minimum Wage Act, NMSA § 50 et seq. *Id.* In June 2021, Bone first moved to conditionally certify a class of workers that includes workers staffed by RUSCO to XTO. *See* D.I. 43. In October 2021, New Mexico District Judge William Johnson transferred this case from New Mexico to this Court. *See* D.I. 61. In February 2022, Plaintiffs renewed their request for conditional certification and requested expedited consideration. *See* D.I. 74.

Now, nearly two years after suit was filed, and one year after Bone first moved for certification, RUSCO[1] seeks to intervene to make the plaintiffs—including Bone who filed this case two years ago—that RUSCO staffed to XTO arbitrate these same claims with XTO. *See* D.I. 97 at 5 (RUSCO "seek[s] to intervene in this litigation to enforce their written [arbitration] agreements with named or opt-in plaintiffs").[2] The Court should deny RUSCO's request.

## B.    SUMMARY OF ARGUMENT.

RUSCO fails to establish intervention is warranted:

1.    First and foremost, RUSCO's motion is untimely.

2.    RUSCO cannot satisfy the requirements for intervention as of right.

3.    Permissive intervention is also inappropriate.

So RUSCO's request to intervene should be denied. But if the Court does not outright deny RUSCO's motion, it should permit discovery regarding when RUSCO became aware of this litigation.

---

[1] RUSCO refers to RUSCO Operating, LLC and Ally Consulting, LLC, collectively.
[2] This includes both named plaintiffs and 9 plaintiffs who opted into this case between September 2020 and April 2021.

C.     CONCISE STATEMENT OF FACTS.

XTO strategically sourced the Day Rate Safety Consultants from staffing companies like RUSCO, intentionally misclassifying them as independent contractors and paying them—through their staffing companies—pursuant to a common "day rate" pay plan (i.e., a flat sum for every day worked regardless of the number of hours worked). *See* D.I. 75 at 8-9, 13-17, 22-24; D.I. 76-1—76-6 at ¶¶ 9–10; D.I. 76-1 at ¶ 27; D.I. 76-2—76-6 at ¶ 28; D.I. 89 at 7, 10-11. XTO employed these workers for far more than 40 hours a week but did not pay them overtime. D.I. 25 at ¶¶ 4, 6, 11-12, 33-34, 60, 111. Because XTO's pay plan violated the FLSA, Bone brought claims against only XTO, not RUSCO. *See* D.I. 1. Only XTO's pay practices are at issue in this litigation. Therefore, Bone opposes RUSCO's untimely and unsupportable application for intervention.

D.     RUSCO'S MOTION TO INTERVENE TO FORCE PLAINTIFFS TO ARBITRATE WITH XTO MUST BE DENIED.

1.     Standards for Intervention

A non-party seeking to intervene as of right must establish: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. FED. R. CIV. P. 24(a)(2); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 365–66 (3d Cir. 1995). All requirements must be met to intervene as of right. *Id.* at 366. "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *PPL Energyplus, LLC v. Solomon*, No. CV 11-745 (PGS), 2011 WL 13128622, at *1 (D.N.J. July 19, 2011) (cite omitted). Courts require the interest be "direct, substantial, and legally protectable." *Hendricks v. Clyne*, No. ST-16-CV-147, 2019 WL 918607, at *1 (V.I. Super. Feb. 20, 2019). RUSCO fails to demonstrate a single element.

For permissive intervention, a non-party must timely show either that it has a conditional right to intervene by a federal statute, or that it has a claim or defense that shares a common question of

2

law or fact with the main action. FED. R. CIV. P. 24(b). In exercising its discretion to permit a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). The Court should also consider "various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed intervenors' interests are already adequately represented in the litigation." *Benjamin v. Dep't of Pub. Welfare of Cmwlth.*, 267 F.R.D. 456, 465 (M.D. Pa. 2010), aff'd sub nom. *Benjamin v. Dep't of Pub. Welfare of Pa.*, 432 Fed. App'x 94 (3d Cir. 2011); *see also* FED. R. CIV. P. 24(b)(3).

### 2. RUSCO Cannot Intervene as a Matter of Right.

#### a. RUSCO's Motion to Intervene is Untimely.

"The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). A denial of intervention based on lack of timeliness must be affirmed unless the Court finds an abuse of discretion. *Id.* In determining whether a motion to intervene is timely, courts should consider "the totality of the circumstances arising from three factors: '(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.'" *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005); *Mountain Top Condo. Ass'n.*, 72 F.3d at 369; *Abramson v. Agentra*, LLC, No. CV 18-615, 2020 WL 7335897, at *3 (W.D. Pa. Dec. 14, 2020). Each of these factors reflects RUSCO's motion is untimely.

RUSCO failed to show its motion to intervene is timely. Without support, RUSCO claims it "could hardly have moved to intervene any sooner." D.I. 97 at 12-13. But that is simply not true. Bone, who was sourced to XTO by RUSCO, brought this suit in **July 2020**. *See* D.I. 1. By September 2020 (more than 20 months ago), at least three other plaintiffs provided to XTO by RUSCO had joined this case. *See* D.I. 3; D.I. 5; D.I. 19. Seven more opt-in plaintiffs provided to XTO by RUSCO joined in April 2021 (more than 15 months ago). *See* D.I. 36; 37; 39; 40; 41; 42. And three additional opt-ins

3

sourced to XTO by RUSCO joined after that. D.I. 57; 62. "[RUSCO's] alleged interests…of enforcing arbitration agreements with the plaintiffs [and] protecting their business model…materialized when individuals with whom [RUSCO] had actually contracted **became a party to the lawsuit**." *Field v. Anadarko Petroleum Corp.*, --F. 4th --, No. 22-20054, 2022 WL 2045627, at *3 (5th Cir. June 7, 2022) (emphasis added). This occurred nearly two years ago—when Bone filed this Action. *See* D.I. 1.

RUSCO offers no explanation as to why it waited almost two years from the date its interests materialized to move to intervene. Nor does it offer anything to show when it first became aware of its so-called interests. Instead, its entire timeliness argument is that "discovery has not yet begun." *See* D.I. 97 at 12. That's not the standard.

Bone first moved for conditional certification in June 2021—a year before RUSCO moved to intervene. *See* D.I. 43. In doing so, he sought to represent a class of workers that includes workers staffed by RUSCO to XTO. *Id.* Workers sourced from RUSCO by XTO even provided declarations in support of conditional certification. *See* D.I. 43-1—43-6. The Parties completed briefing on conditional certification in New Mexico in August 2021. *See* D.I. 55. Of course, RUSCO did nothing to protect its "interest" during that period. In fact, it waited more than nine months to do anything about it. *See* D.I. 97. This is true even though both named plaintiffs and 12 opt-in plaintiffs RUSCO sourced to XTO were already parties in this case. *See* D.I. 1; 3; 5; 19; 36; 37; 39; 40; 41; 42; 57; 62, *complaint and consent notices.*

In February 2022, after the case was transferred to Delaware, Bone again moved for certification. *See* D.I. 74. Bone again sought to represent a class of workers that includes workers staffed by RUSCO to XTO and he again submitted declarations from workers sourced by RUSCO to XTO in support his motion. *See id.*; D.I. 76-1—76-6. In early March 2022, Kimberly McCoy of Workrise Technologies Inc. (Workrise) provided a declaration to XTO in support of XTO's opposition to Bone's motion for certification. *See* D.I. 83. Ms. McCoy is the Deputy General Counsel,

4

Head of Litigation for Workrise. *Id.* Counsel for RUSCO indicates "RUSCO Operating, LLC … is a wholly owned subsidiary of Workrise, as is Ally Consulting, LLC[.]" D.I. 97-2. Despite this additional evidence of this ligation, RUSCO **again** failed to take any action—this time for almost **three additional months**. RUSCO's delay and its misrepresentation to this Court are inexcusable.

"When a proposed intervenor knew or should have known of the pendency of a lawsuit at an earlier time, but failed to act at that time to protect its interests, that inaction will weigh heavily against the timeliness of the motion." *Haymond v. Lundy*, No. CIV.A. 99-5048, 2002 WL 31149289, at *4 (E.D. Pa. Sept. 26, 2002); *see also Arthur G. McKee & Co. v. Gulf & W. Indus., Inc.*, 52 F.R.D. 332, 334 (D. Del. 1971); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir.1994); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 950 (3d Cir. 2012); 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916, at 539-40 (3d ed. 2007) ("When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention.").

RUSCO's intervention at this stage will significantly prejudice the parties. "The prejudice prong of the timeliness inquiry 'measures prejudice caused by the intervenors' delay—not by the intervention itself.'" *Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.,* No. CV 09-1572, 2017 WL 1376298, at *4 (W.D. Pa. Apr. 17, 2017); 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1916 (3d ed. 2017) ("Delay is not the only possible form of prejudice to the existing parties, but if the intervention will not delay the termination of the litigation intervention ordinarily will be allowed.")

Weeks or months may pass while RUSCO attempts to enforce its arbitration agreements against parties who brought claims against only XTO. RUSCO could have raised these arguments at the case's inception, or in the intervening 23 months since, but did not. It's too late now.

Though Bone demonstrates, *supra*, RUSCO sat on the sidelines far too long after it knew of this litigation, Bone must conduct discovery to determine exactly when RUSCO first became aware of this suit.

### b.      RUSCO Does Not Have a Sufficient Interest in the Litigation.

The plain language of Rule 24(a) requires RUSCO to establish it has an interest in the "property or transaction that is the subject of the action." FED. R. CIV. P. 24(a)(2). RUSCO had to show its arbitration agreements gave it a "legally cognizable interest" in this action. *Mountain Top Condo. Ass'n*, 72 F.3d at 366. It need not be a "legal interest" if the proposed intervenor can show it "will be practically disadvantaged by the disposition of the action." *Benjamin ex rel. Yock*, 701 F.3d at 951. "However, rather than merely showing some impact, the applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.*

RUSCO raises two alleged interests to support intervention in this matter: (1) an interest in enforcing its arbitration agreements[3] with Bone and the other workers it sourced to XTO; and (2) an interest in defending its classification of these workers as independent contractors and protecting its business model and pay structure. D.I. 97 at 13-14. Neither are viable bases for intervention.

### i.      RUSCO Cannot Enforce the Arbitration Agreements.

First, RUSCO cannot enforce its arbitration agreements with these workers to make them arbitrate their claims against XTO. And RUSCO simply cannot make nonsignatory XTO arbitrate with those workers RUSCO sourced to it.

RUSCO does not have standing to make these workers and XTO arbitrate this dispute. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017) ("[a]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."). "In order for a party to have standing under Article III, that party must show that: he has

---

[3] RUSCO admits some of these workers are not bound by arbitration agreements. *See* D.I. 97 at 5-6.

suffered or will suffer an injury, his injury is traceable to the defendant's conduct, and a favorable federal court decision will likely redress the injury." *Samnorwood Indep. Sch. Dist. v. Texas Educ. Agency*, 533 F.3d 258, 264-65 (5th Cir. 2008). Nothing in RUSCO's Motion identifies a current or future injury to RUSCO caused by any plaintiff (or XTO). No one claims RUSCO is liable as their employer. RUSCO's perceived "injury" in making the workers at issue arbitrate with XTO in a case where it is not a defendant, and could not be a defendant, does not give RUSCO standing to pursue the relief it seeks.

Further, RUSCO's Motion should be denied because XTO has not moved to compel any plaintiffs to arbitration. *See Martin v. Tap Rock Resources, LLC*, No. 2:20-cv-170, 2022 WL 278874 (D. N.M. Jan. 31, 2022) (allowing RUSCO to intervene where, unlike here, both RUSCO and its customer wished to compel arbitration). As an intervenor, RUSCO can only enforce its purported "right" to make the workers at issue arbitrate against XTO if XTO can. But since XTO has no arbitration agreement with these plaintiffs, RUSCO cannot compel any of the plaintiffs or XTO to arbitrate plaintiffs' claims **against XTO**.

### ii.     RUSCO's Classification Practices are Not at Issue.

Second, RUSCO's liability under either the FLSA or NMMWA will not be adjudicated in this proceeding, and therefore RUSCO's business model is not at issue. Plaintiffs seek to hold **XTO** liable for its own violations of the FLSA and NMMWA—not for RUSCO's violations, if any. *See* D.I. 1. If XTO did not pay in a manner that complies with the FLSA and NMMWA, this only creates liability for XTO (even if XTO's method mirrors RUSCO's). In other words, a judgment in favor of the RUSCO plaintiffs would not alter their classification status with respect to RUSCO. That is because XTO has an independent duty, separate and apart from RUSCO's duty, to comply with the FLSA (and NMMWA). *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942-43 (8th Cir. 2008); *Curry v. M-I, LLC*, No. 2:18-CV-306, 2020 WL 486790, at *1 (S.D. Tex. Jan. 30, 2020).

The FLSA contemplates an employee may have more than one employer responsible for its provisions. *See* 29 C.F.R. § 791.2; *Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan*, 78 F.Supp.2d 1142, 1150 (D. Colo. 1999) (collecting cases). To the extent RUSCO's argument is construed as suggesting the RUSCO plaintiffs should have sued RUSCO as an "employer" or "joint employer," the Court must also reject this argument. *See Joaquin v. Coliseum, Inc.*, A-15-CV-787-LY, 2016 WL 3906820, at *3 (W.D. Tex. July 13, 2016) ("[A] party must **plead** at least an employment relationship with each employer **before** the issue of joint employment may be determined.") (emphasis added). "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Thus, "[e]ven if [RUSCO] is an employer under the FLSA, [Bone] need not bring such a claim against [it]. If [RUSCO] is liable for the FLSA violations and [XTO] is not, it is [Bone's] prerogative to risk recovering from neither over attempting to recover from [RUSCO]." *Marquez v. El Portal, Inc.*, No. 5:13-CV-01395-JHE, 2017 WL 3224475, at *13 (N.D. Ala. Jan. 12, 2017) *adopted in part*, 2017 WL 3218079 (N.D. Ala. July 28, 2017) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005)).[4] Any determination of RUSCO's liability must await claims brought **against RUSCO**; otherwise, it would be an impermissible advisory opinion. *See Lewis v. Contl. Bank Corp.*, 494 U.S. 472, 477 (1990); *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1379 (10th Cir. 2011).

---

[4] *See also Flynn v. Sanchez Oil & Gas Corp.*, No. SA-19-CV-00867-JKP, 2019 WL 6606530, at *2 n.1 (W.D. Tex. Dec. 5, 2019) ("nothing in the FLSA…prevents an employee from suing multiple entities or individuals as its joint employers, in the same lawsuit or in two separate lawsuits"); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F.Supp.3d 152, 160 (D. Mass. 2019) (same); *Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037, 1062 (D. Or. 2010) (same); *Dowd v. Directv, LLC*, No. 14-cv-14018, 2016 WL 28866, at *4 (E.D. Mich. Jan. 4, 2016) ("there is nothing in the multifactor tests for either employment or joint employment that requires a plaintiff to establish that he is an FLSA 'employee' of each and every entity above him.").

"[T]he employment relationship test [under the FLSA] is the same whether there is one putative employer or multiple. Crucially, the test is applied to each putative employer individually." *Romero*, 368 F. Supp.3d at 159 (D. Mass. 2019) (emphasis added); *see also Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("The FLSA imposes individual liability on any person acting directly or indirectly in the interest of an employer in relation to an employee"). Put differently, whether RUSCO is also an employer of Bone and the putative class is irrelevant to this Court's determination of XTO's liability.

Contrary to what RUSCO says, the RUSCO plaintiffs' claims against XTO do not depend on their agreements with RUSCO, including their agreement to work for RigUp/RUSCO/Workrise or their customers, or some combination thereof, as independent contractors (as opposed to employees). *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) (FLSA rights cannot be waived by contract); *Dole v. Snell*, 845 F.2d 802, 804 (10th Cir. 1989) ("Courts are not limited by any contractual terminology used by the parties or by the traditional common law concepts of 'employee' or 'independent contractor.'"); *Powers v. Emcon Assoc., Inc.*, Civ. A. No. 14-cv-03006-KMT, 2017 WL 4075766, at *5 (D. Colo. Sept. 14, 2017) (agreements designating workers as independent contractors are not indicative of the economic realities of the working relationship and are not relevant to the analysis of a worker's classification status).

Instead, these workers' claims against XTO rely on the economic realities of their relationship with XTO (not RUSCO).[5] *See Thompson*, 748 F.3d at 148; *Sabo v. Reo Prop. Mgmt., LLC*, No. 3:CV-15-0131, 2015 WL 1964606, at *2-3 (M.D. Pa. Apr. 30, 2015); *Acosta v. Paragon Contractors Corp.*, 884 F.3d

---

[5] The economic realities analysis uses six factors: (1) the degree of control exercised by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Martin v. Selker Bros. Inc.,* 949 F.2d 1286, 1293 (3d Cir. 1991).

1225, 1235 (10th Cir. 2018). These factors examine the actions taken by the alleged employer (XTO) to determine whether an employment relationship exists **with that alleged employer**.

This case is about XTO's status as an employer and its relationship with the RUSCO plaintiffs. It does not matter whether RUSCO classified and paid them or that they contractually agreed to work for RUSCO as independent contractors because **XTO's policies are the only practices at issue**. Even if, for example, RUSCO decided the RUSCO plaintiffs were independent contractors, this tells the Court nothing about XTO's employment practices. This case turns on XTO's actions and the economic realities of its relationship with the RUSCO plaintiffs—not RUSCO's relationship with them. The fact RUSCO's conduct may be relevant (and it's not) does not warrant intervention because these plaintiffs challenge only XTO's employment practices. *See* D.I. 1. Moreover, RUSCO failed to show XTO cannot defend its own practices or that any finding concerning XTO's employment practices would directly impact RUSCO's practices since a judgment against XTO would not require RUSCO to do anything (let alone change its classification practice).

While RUSCO bemoans how this Action could affect the legality of classifying workers as independent contractors in the oil and gas industry (including those who use its marketing platform), this is the exact type of remote and speculative economic interest which courts in this Circuit have routinely rejected as a basis for intervention. No ruling by this Court creates liability for RUSCO or creates a res judicata effect such that RUSCO would be bound, joint and severally, by the judgment. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (the proposed intervenor's interest must be "specific to them, ... capable of definition, and ... be directly affected in a substantially concrete fashion by the relief sought"). "It is not sufficient that the claim be incidentally affected; rather, there must be 'a tangible threat' to the applicant's legal interest.... [T]his factor may be satisfied if, for example, a determination of the action in the [proposed intervenors'] absence will have a significant stare decisis effect on their claims, or if the [proposed intervenors'] rights may be affected by a

proposed remedy." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992); *see also Statewide Masonry v. Anderson*, 511 Fed. App'x 801, 804-05 (10th Cir. 2013) ("mere economic interest is not enough to warrant inclusion of a nonparty."); *City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (financial benefit is too attenuated an interest to warrant intervention).

### c.    Resolving These Claims Will Not Impair RUSCO's Alleged Interests.

Rule 24(a) requires a potential intervenor to be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." FED. R. CIV. P. 24; *see also Commonwealth of Pennsylvania v. President United States of America*, 888 F.3d 52, 59 (3d Cir. 2018). The question of impairment is not separate from the question of existence of an interest. *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 568 (D. Del. 1981). It is "not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Commonwealth of Pennsylvania*, 888 F.3d at 59 (quoting *Brody*, 957 F.2d at 1123). When viewed under this standard, the attenuated nature of RUSCO's alleged interest is clear. There are no claims against RUSCO for it to defend against. No plaintiff brings claims against RUSCO such that its liability can be adjudicated in this Action. Consequently, RUSCO cannot be "deprived" or the ability to defend itself against the RUSCO plaintiffs' claims. Further, any judgment obtained from XTO would not require RUSCO to do anything with regards to its business model or payroll practices. The claims concern XTO's alleged FLSA and NMMWA violations, which are independent of any contract the RUSCO plaintiffs maintained with RUSCO.

By failing to show it may be liable for anything as result of this Action, RUSCO failed to show any alleged "interest" will be impaired if it cannot intervene. If RUSCO feels the need to "defend" its client's classification policies (to the extent it has knowledge of them), RUSCO can file an amicus brief. *See In re Banks*, 222 Fed. App'x 103, 105 (3d Cir. 2006) (affirming district court's order denying

motion to intervene and instead allowing the applicant to file an amicus curiae brief); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. CV 03-1519 (AET), 2005 WL 8179913, at *1–2 (D.N.J. July 13, 2005) (same).

### d.    Any Alleged "Interest" is Adequately Represented by XTO.

RUSCO claims its "interests" in this Action "diverge from XTO" and "may be inadequately represented by XTO because XTO has not itself sought to compel any Plaintiffs to arbitration." D.I. 97 at 8-9. The Third Circuit recognizes that a proposed intervenor's interest is not adequately protected only where it "diverge[s] sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests." *Commonwealth of Pennsylvania*, 888 F.3d at 60 (3d Cir. 2018). "This burden is generally 'treated as minimal' and requires the applicant to show 'that representation of his interest 'may be' inadequate.'" *Id.* "Notwithstanding that minimal burden, a rebuttable presumption of adequacy applies '[w]hen the party seeking intervention has the same ultimate objective as a party to the suit.'" *Abramson*, 2020 WL 7335897, at *4. "To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *In re Cmty. Bank of N. Virginia*, 418 F.3d at 315.[6]

RUSCO had to demonstrate some adversity, collusion, or nonfeasance. *Id.* But it could not. "[W]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented." *Id.*; *see also Coal. of Az.*, 100 F.3d at 845; *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996). The failure to presume

---

[6] The Supreme Court's recent decision in *Berger v. N. Carolina State Conf. of the NAACP*, No. 21-248, 2022 WL 2251306 (U.S. June 23, 2022) is not to the contrary. The Court did not purport to decide "whether a presumption of adequate representation might sometimes be appropriate" outside of the limited context where "a duly authorized state agent seeks to intervene to defend a state law." *Id.* at *10. That is clearly not the situation here.

adequate representation is an error of law and an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996). (a "court by definition abuses its discretion when it makes an error of law").

Moreover, "inadequacy of representation is or may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervener, or by the failure of the representative in the fulfillment of his duty." *Evans v. Buchanan*, 130 F.R.D. 306, 311-12 (D. Del. 1990) (cites omitted). "When there is an identity of interest or ultimate objective, mere disagreement over how to achieve the stated goal is insufficient to show inadequacy of representation[.]" *Id.* at 313; *see also Izzio v. Century Partners Golf Mgmt., L.P.*, No. 3:14-CV-03194-P, 2015 WL 5472845, at *3 (N.D. Tex. Sept. 15, 2015) ("Mere tactical differences do not make inadequate the representation of those whose interests are identical" and nor does a "difference of opinion concerning litigation strategy or individual aspects of a remedy ... overcome the presumption of adequate representation" and "representation is not inadequate simply because … the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy") (quotes omitted).

Allowing RUSCO to intervene would effectively render the "adequate representation" element superfluous. RUSCO needed to affirmatively demonstrate some adversity between it and XTO. It did not, nor could it. That is because XTO and RUSCO's interests are fundamentally aligned. Both contend the RUSCO plaintiffs were not their "employees" but were instead independent contractors. *See, e.g.,* D.I. 97 at 5-10; D.I. 97-2 at 3-4 (addressing reasons why RUSCO believes workers utilizing its platform are properly classified as independent contractors). RUSCO thus cannot overcome the presumption that XTO will adequately represent its interest in protecting RUSCO's "business model."

It is unclear what RUSCO brings to the table as an intervenor. RUSCO cannot defend its own liability (as none is currently at issue) and the Parties are perfectly capable of representing their own interests. Because "[o]ne of the arts of litigation is keeping matters as simple as possible," *Cty., Utah*

13

*v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007), the Court should deny RUSCO's attempts to intervene.

        **3.**      **Permissive Intervention is Inappropriate.**

Permissive intervention is equally untenable. At the outset, for the reasons discussed in detail *supra*, RUSCO's motion to intervene is untimely and allowing it to intervene would prejudice the adjudications of the Parties' rights. *See* FED. R. CIV. P. 24(b). RUSCO does not claim it has a conditional right to intervene by federal statute. *See* D.I. 97 at 17-19. Instead, RUSCO claims only that permissive intervention is somehow appropriate because RUSCO asserts "a claim or defense" that shares a "common question of law or fact" with this Action. *Id.* Specifically, RUSCO claims: (1) "the enforcement of the RUSCO Plaintiffs' arbitration commitments" constitutes a common question of law; and (2) common questions of fact exist concerning the duties, pay, and classification of the workers at issue which are "inextricably bound up with RUSCO—and more specifically RUSCO Plaintiffs' Agreements with RUSCO" such that a "[w]ithout RUSCO's participation, this case will not have all the facts on which liability depends." *Id.* Such arguments are non-sensical.

Even assuming, arguendo, these were common questions of fact and law at issue, neither indicates a "claim or defense" asserted by RUSCO. RUSCO brings no claims against any plaintiff or XTO. And RUSCO can bring no defense because no one brought claims against it. Because there is no claim against RUSCO to compel to arbitration, RUSCO may not rely on "the enforcement of the RUSCO Plaintiffs' arbitration commitments" to support permissive intervention.

To the extent RUSCO contends the determination of whether XTO properly classified these workers necessarily involves addressing RUSCO's actions as the entity that classified and paid them, not only does this again presume a claim against RUSCO exists, but it also fails to understand its (and XTO's) independent duties under the FLSA. Again, XTO had an independent duty to properly pay plaintiffs that it could not delegate to RUSCO. *See Chao* 547 F.3d at 942-43. The inquiry into whether

RUSCO properly classified those workers it staffed to XTO is not identical to the question of whether XTO properly classified them, and evidence for the former is not necessarily relevant to the latter.

RUSCO's intervention is brought solely to prejudice plaintiffs' right to proceed in this forum. To "show" it has a claim or defense in this matter under Fed. R. Civ. P. 24(c), RUSCO attaches its proposed Motion to Compel Arbitration (D.I. 97-1). This does nothing to show RUSCO has a claim or defense in this matter or that RUSCO wants a seat at the table.

## E.   RUSCO's Request for Attorneys' Fees Must Be Denied.

RUSCO "seeks the award of its attorneys' fees and costs due to Plaintiffs' counsels' frivolous refusal to add RUSCO to this lawsuit." D.I. 97 at 6. But if anyone should receive attorneys' fees relating to RUSCO's attempted intervention, it is Bone's counsel. After all, RUSCO seeks to intervene so it may compel the workers it staffed to XTO to arbitrate with XTO, even though XTO has not sought to compel arbitration, because it cannot. Plaintiffs' opposition is not "unsupportable" or brought in "bad-faith," but RUSCO's Motion is.

## F.   Conclusion.

For the reasons set forth herein, the Court should deny RUSCOs Motion to Intervene (D.I. 96).

Dated: June 24, 2022                              Respectfully submitted,

Of Counsel:                                       Farnan LLP

Michael A. Josephson                              /s/ Michael J. Farnan
Andrew Dunlap                                     Sue L. Robinson (Bar No. 100658)
State Bar No. 24078444                            Brian E. Farnan (Bar No. 4089)
Josephson Dunlap Law Firm                         Michael J. Farnan (Bar No. 5165)
11 Greenway Plaza, Suite 3050                     919 North Market St. 12th Floor Wilmington,
Houston, Texas 77046                              DE 19801
Tel: (713) 352-1100                               Telephone: 302-777-0300
Fax: (713) 352-3300                               Facsimile: 302-777-0301
mjosephson@mybackwages.com                        srobinson@farnanlaw.com
adunlap@mybackwages.com                           bfarnan@farnanlaw.com
                                                  mfarnan@farnanlaw.com

15

Richard J. (Rex) Burch
State Bar No. 24001807
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Clif Alexander
State Bar No. 24064805
Austin Anderson
State Bar No. 24045189
ANDERSON ALEXANDER, PLLC
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (36) 452-1284
clif@a2xlaw.com
lauren@a2xlaw.com                          *Attorneys for Plaintiffs Cory Bone and*
                                           *Luis Carrillo*

16