IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CORY BONE AND LUIS CARRILLO, Individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>XTO ENERGY, INC.,<br><br>      Defendant. | CIVIL ACTION<br>NO. 21-1460 |

## OPINION

**Slomsky, J.**                                          **August 23, 2023**

### I.  INTRODUCTION

    This case involves allegations by Plaintiffs Corey Bone and Luis Carrillo ("Plaintiffs") that Defendant XTO Energy, Inc. ("XTO") violated the Fair Labor Standards Act ("FLSA"). Plaintiffs are former Safety Consultants who were paid for work done for XTO. Pursuant to Section 216(b) of the FLSA, Plaintiffs seek to bring a collective action on behalf of themselves and current and former Safety Consultants who were paid by XTO for their services and did not receive overtime wages under the FLSA. XTO contends that Plaintiffs and the potential collective members on whose behalf they seek to file this action are not employees of XTO entitled to overtime wages under the FLSA, but instead are independent contractors who utilize an online platform operated by RigUp, Inc. to advertise their services to companies like XTO. Before the Court is XTO's Motion to Dismiss the FLSA allegations in the Amended Complaint.[1]

---

[1] Plaintiffs also seek to represent themselves and all other current and former day-rate Safety Consultants not paid overtime wages by XTO in a class action under Federal Rule of Civil Procedure 23(b)(3), in which they allege violations of the New Mexico Minimum Wage Act,

## II. BACKGROUND

### A. The Amended Complaint[2]

On September 25, 2020, Plaintiffs Corey Bone and Luis Carrillo filed the two-count Amended Complaint on behalf of themselves and others similarly situated. (Doc. No. 25.) Plaintiffs seek to bring both a collective action pursuant to the FLSA and a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). For their proposed collective action alleging violations of FLSA requirements on overtime pay,[3] Plaintiffs seek to conditionally certify: "All Safety Consultants who worked for XTO Energy, Inc., anywhere in the United States, at any time from July 14, 2017 through the final disposition of this matter" (the "FLSA Collective Members"). (Id. at 9.)

XTO is an international natural gas and oil producer operating with five divisions in the United States, Western Canada, and South America. (Id. at 5.) The five divisions are the Permian, Delaware, Mid-Continent, Canada, and Argentina Divisions. (Id.) The Permian Division operates in New Mexico and Texas. (Id.) XTO controls several well sites and has substantial mineral

---

N.M. Stat. Ann. § 50-4-20, et seq. In its Motion to Dismiss, XTO states that while it "is not currently seeking dismissal of the purported class definition for the state law claim . . . , it denies that Plaintiffs have asserted an appropriate class under the New Mexico Minimum Wage Act, denies that such a class should be certified under Rule 23, and further denies that any such putative class members are similarly situated to Plaintiff." (Doc. No. 28 at 1.) As such, because consideration of whether the proposed class meets the requirements of Rule 23 is premature at the motion to dismiss stage, see Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011), the Rule 23 class action allegations will not be discussed in this Opinion.

[2] At the motion to dismiss stage, the facts alleged in the Amended Complaint are accepted as true.

[3] "The Fair Labor Standards Act sets minimum wages and overtime rates for work." Tyger v. Precision Drilling Corp., ___ F.4th ___, 2023 WL 5257688, at *1 (3d Cir. Aug. 16, 2023). Specifically, employees who work more than forty hours in a single workweek are entitled to at least one and a half times their regular rate for the hours worked over forty. 29 U.S.C. § 207(a)(2).

interests in New Mexico. (Id.) XTO hires Safety Consultants to oversee operations at its well sites and pays them a day rate rather than a salary or hourly rate. (Id.)

Safety Consultants' primary responsibility at the well sites is to enforce XTO's safety policies and procedures. (Id. at 6.) Their job functions are "pre-determined by XTO." (Id.) They are "prohibited from varying their job duties outside of the predetermined parameters." (Id.) In this regard, Plaintiffs allege that they and other similarly situated Safety Consultants are employees of XTO, not independent contractors. (Id. at 2.) To support this claim, Plaintiffs allege in the Amended Complaint the following characteristics of Safety Consultants' employment relationship with XTO:

> 36. Upon information and belief, Plaintiffs and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by XTO and/or their clients.
>
> 37. Upon further information and belief, Plaintiffs and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by XTO.
>
> 38. Virtually every job function was pre-determined by XTO, including Plaintiffs and the Putative Class Members' schedule of work and related work duties. Plaintiffs and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.
>
> 39. . . . Plaintiffs and the Putative Class Members' job functions were primarily routine in nature requiring no college education or other advanced degree.
> . . .
> 41. XTO determined the hours Plaintiffs and the Putative Class Members worked.
>
> 42. XTO set Plaintiffs and the Putative Class Members' pay and controlled the number of days (and hours) they worked.
>
> 43. XTO set all employment-related policies applicable to Plaintiffs and the Putative Class Members.
>
> 44. XTO maintained control over pricing and marketing. XTO also chose equipment and product suppliers.

45. XTO owned or controlled the equipment and supplies that Plaintiffs and the Putative Class Members used to perform their work.

46. XTO had the power to hire and fire Plaintiffs and the Putative Class Members.

47. XTO made all personnel and payroll decisions with respect to Plaintiffs and the Putative Class Members, including but not limited to, the decision to pay Plaintiffs and the Putative Class Members a day rate with no overtime pay.

48. XTO provided tools and equipment that Plaintiff and the Putative Class Members used.

49. Plaintiffs and the Putative Class Members did not employ their own workers.

50. Plaintiffs and the Putative Class Members worked continuously for XTO on a permanent full-time basis.

51. XTO, instead of Plaintiffs and the Putative Class Members, made the large capital investments in leases, buildings, equipment, tools, and supplies.

52. Plaintiffs and the Putative Class Members relied on XTO for their work.

53. Plaintiffs and the Putative Class Members did not market any business or services of their own.

54. Instead, Plaintiffs and the Putative Class Members worked the hours assigned by XTO, performed duties assigned by XTO, worked on projects assigned by XTO, and worked for the benefit of XTO and its customers.

55. XTO paid Plaintiffs and the Putative Class Members on a weekly basis.

56. Plaintiffs and the Putative Class Members did not earn a profit based on any business investment of their own.

57. . . . Plaintiffs and the Putative Class Members' only earning opportunity was based on the number of days they were allowed to work, which was controlled by XTO.

58. XTO improperly classified Plaintiffs and the Putative Class Members as independent contractors.

59. The classification was improper because Plaintiffs and the Putative Class Members were not in business for themselves.

60. Instead, they were economically dependent upon XTO for their work. (Id. at 6-8.)

Plaintiffs "routinely work (and worked) in excess of forty (40) hours per workweek." (Id. at 2.) However, they allege that "XTO knowingly and deliberately failed to compensate [them] and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek." (Id.)

Plaintiffs also allege that they and "[o]ther similarly situated employees have been victimized by XTO's patterns, practices, and policies, which are in willful violation of the FLSA." (Id. at 11.) Plaintiffs assert "[u]pon information and belief" that "these workers are geographically dispersed, residing and working in locations across the United States." (Id. at 12.) As a result, Safety Consultants in the proposed class may work in different states across the country at different times of the year. (Id.)

### B. Procedural Background

On October 9, 2020, XTO filed the Motion to Dismiss "request[ing] that the Court dismiss, limit and/or strike the class/collective action allegations contained in" the Amended Complaint. (Doc. No. 28 at 1.) On September 22, 2021, Chief Judge William P. Johnson of the United States District Court for the District of New Mexico issued a Memorandum Opinion and Order Granting in Part and Deferring in Part Defendant's Motion to Dismiss. (Doc. No. 58.) In his Memorandum, Chief Judge Johnson stated the following:

> Because personal jurisdiction over the claims by non-New Mexico plaintiffs is not proper in this Court, Plaintiffs have two choices. They may accept the loss of the non-New Mexico plaintiffs and proceed as a collective composed solely of New Mexico plaintiffs, or they may request that this Court transfer the entire case to Delaware, where Defendant is incorporated and therefore may be subject to general jurisdiction on all claims from the nationwide collective.

(Id. at 8.)

Plaintiff thereafter filed a Motion to Transfer (Doc. No. 59) the case to Delaware under 28 U.S.C. § 1404(a), which was opposed by XTO (Doc. No. 60). On October 15, 2021, this case was transferred by Chief Judge Johnson to the District of Delaware. (Doc. No. 61.) In his Order transferring the case, Chief Judge Johnson granted Plaintiffs' Motion and stated that:

> Under § 1404(a), a court may transfer a civil action "to any other district or division where it might have been brought" if the transfer is "in the interest of justice." Here, both sides agree that a nationwide FLSA collective action is proper in a defendant's home state, where general jurisdiction applies. See Doc. 32 at 12; Doc. 33 at 3. The District of Delaware is Defendant's home state—a place where the action "might have been brought." See Doc. 25, ¶ 15.

(Id. at 2.) Chief Judge Johnson then explained that transfer under § 1404(a) to the District of Delaware was in the interest of justice. (Id. at 3-4.)

The case was reassigned to United States District Court Judge Gregory B. Williams. On May 19, 2022, XTO filed a Motion to Stay Proceedings in the case pending the United States Supreme Court's decision in Hewitt v. Helix Energy Solutions, Inc. (Doc. Nos. 94, 95.) The issue in Hewitt was whether "a high-earning employee is compensated on a 'salary basis' when his paycheck is based solely on a daily rate." 143 S. Ct. 677, 682 (2023). In its Motion, XTO argued that "[t]he outcome of [Hewitt] will be determinative of the central legal issue in this case – identifying when alleged 'day rate' workers may be exempt from overtime under the FLSA." (Doc. No. 95 at 8.) On September 20, 2022, Judge Williams granted the Motion to Stay. (Doc. No. 107 at 2.) On February 22, 2023, the Supreme Court issued its decision in Hewitt, holding that high-earning employees paid at a daily rate are entitled to overtime pay. 143 S. Ct. at 682. After the Hewitt decision, the parties agreed that the stay should be lifted and the case should proceed.

On March 8, 2023, the parties in this case filed a Joint Motion to Lift Stay.[4] (Doc. No. 109.) In their Joint Motion, the parties "respectfully request[ed] that the Court lift the stay and rule on the pending motions, including" the instant Motion to Dismiss (Doc. No. 28). (Doc. No. 109 at 2.) On May 24, 2023, the Court issued an Order granting the Joint Motion (Doc. No. 109) and vacating the stay (Doc. No. 107). (Doc. No. 112.)

In the instant Motion to Dismiss, XTO argues that Plaintiffs' "overbroad definition . . . fails to give XTO fair notice regarding the composition of Plaintiffs' proposed collective [action] and is not supported by any plausible factual allegations as required by the Federal Rules of Civil Procedure." (Doc. No. 28 at 14-15.) XTO further argues that Plaintiffs omit from their Amended Complaint details regarding the duties of Safety Consultants, the locations where Safety Consultants "with the same duties were subjected to the same pay policy . . . , the number of individuals within the proposed collective or class, the locations where they performed services, or the circumstances of their own compensation, contractual and/or employment relationships." (Id. at 17-18.) For reasons discussed below, Plaintiffs have plausibly alleged sufficient facts in the Amended Complaint to sustain the FLSA overtime claim. Therefore, the Motion to Dismiss will be denied.

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action,

---

[4] On November 3, 2022, the Chief Judge of the United States Court of Appeals for the Third Circuit "designate[d] and assign[ed] the Honorable Joel H. Slomsky of the United States District Court for the Eastern District of Pennsylvania [to this case] for such a period as is necessary for the disposition." (Doc. No. 108.)

supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.

2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV.  ANALYSIS

XTO advances two arguments in support of its Motion to Dismiss.[5] First, XTO asserts that:

> Plaintiffs' proposed class definition cannot survive dismissal because they have not alleged sufficient details regarding their own duties or the allegedly applicable pay practices and the allegedly similar duties and pay practices concerning the putative class members and the [Amended] Complaint lacks any factual basis to support a class definition encompassing the entirety of the United States, without any geographic limitations.

(Doc. No. 28 at 21.) Second, XTO claims that Plaintiffs' FLSA collective action allegations should be dismissed "because they offer nothing more than mere conjecture and unfounded speculation

---

[5] XTO's Motion to Dismiss was filed while the case was before Chief Judge Johnson in the District of New Mexico. Another argument raised in the Motion to Dismiss is that the District of New Mexico lacked personal jurisdiction over XTO. (See Doc. No. 28 at 4-13.) In Fischer v. Fed. Express Corp., the Third Circuit held that it "believe[s] an FLSA collective action should operate like an individual in personam suit for purposes of personal jurisdiction, meaning the district court must have personal jurisdiction over the defendant with respect to each opt-in plaintiff's individual claims." 42 F.4th 366, 380 (3d Cir. 2022). In other words, traditional personal jurisdiction rules apply to FLSA collective actions.

"For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business." Id. at 383. Because this case was transferred to Delaware and XTO is incorporated in Delaware, and the parties' agreement that this nationwide FLSA collective action is proper in Delaware where general jurisdiction applies, this Court has general personal jurisdiction over XTO and can hear all the "opt-in plaintiff's individual claims." Id. at 380.

regarding workers outside of New Mexico and Texas, the only locations in which Plaintiffs contend they worked." (Id. at 25.) Specifically, XTO states the following:

> Additionally, Plaintiffs have failed to assert any specific plausible allegations regarding the titles, duties, or pay practices of other "consultants," identify any geographic location of the other individuals they seek to represent, identify the varied third party consulting firms that employed these other individuals (much less their own third party firm, RigUp, Inc.), or allege whether these individuals in fact performed services in excess of forty (40) hours per week and were entitled to but denied overtime compensation. . . . In the pending case, . . . the overbroad putative class definition encompasses nearly every individual who performed services even only tangentially related to safety operations.

(Id. at 26-27.)

The two claims, while quite broad as alleged, will be construed to aver that (1) Plaintiffs and the putative FLSA Collective Action Members are not employees of XTO[6] and (2) they are not entitled to overtime wages under the FLSA. Accordingly, the questions in dispute at this stage are whether, accepting the facts alleged in the Amended Complaint as true, Plaintiffs have

---

[6] Courts in the Third Circuit "use a six-factor test to determine whether a worker is an 'employee' or an 'independent contractor' under the FLSA." Verma v. 3001 Castor, Inc., 937 F.3d 221, 229 (3d Cir. 2019) (citation omitted). The six factors are:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanence of the working relationship; [and]
> (6) whether the service rendered is an integral part of the alleged employer's business.

Id. (quoting Martin v. Selker Bros., 949 F.2d 1286, 1293 (3d Cir. 1991)). A court must assess these factors "in the 'circumstances of the whole activity' to determine whether the worker is an employee, that is, one "dependent upon the business to which [he] render[s] service," or an independent contractor who, "'as a matter of economic reality,' operat[es] an independent business for [himself]." Id. at 230 (quoting Selker Bros., 949 F.2d at 1293) (citation omitted).

plausibly alleged that they and the other Safety Consultants were employees of XTO and whether XTO violated the FLSA's overtime wage provisions.[7]

Here, Plaintiffs plausibly allege in the Amended Complaint that they and the other Safety Consultants were employees of XTO because: (1) XTO controlled through "standardized" and "pre-determined operational plans" all aspects of Safety Consultants' job, including hours and days worked per week, "all employment-related policies[,] . . . all personnel and payroll decisions," and "[v]irtually every job function"; (2) Safety Consultants "did not earn a profit based on any business investment of their own" and "did not market any business or services of their own"; (3) Safety Consultants "did not employ their own workers," XTO "made the large capital investments in leases, buildings, equipment, tools, and supplies," and "XTO owned or controlled the equipment and supplies that" Safety Consultants used; (4) Safety Consultants did not need specialized training to perform their job functions, which "were primarily routine in nature requiring no college education or other advanced degree"; and (5) they worked for XTO on a full-time permanent basis. (Doc. No. 25 at 6-8.) Based on these allegations, Plaintiffs have plausibly alleged in accordance with the Verma factors that they are employees "dependent upon" XTO for work and are protected by the FLSA's overtime wage provisions. See Verma, 937 F.3d at 230.

Plaintiffs also plausibly allege here that XTO violated the FLSA's overtime wage provisions, the second question in issue. In Davis v. Abington Mem. Hosp., the Third Circuit Court of Appeals adopted the Second Circuit's approach for determining whether a plaintiff has sufficiently alleged a FLSA overtime claim. 765 F.3d 236, 241-42 (3d Cir. 2014) (adopting Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106 (2d Cir. 2013)). "[I]n order to state a

---

[7] Whether the putative FLSA Collective Action Members are similarly situated to Plaintiffs is determined after a motion for conditional certification is decided, not at this early stage of the litigation.

plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a <u>given</u> workweek <u>as well as</u> some uncompensated time in excess of the [forty] hours." Id. at 242 (internal quotation marks omitted) (emphasis in original) (quoting <u>Lundy</u>, 711 F.3d at 114). "[A] plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours . . . she worked during one or more of <u>those</u> forty-hour weeks, would suffice." Id. at 243 (footnote omitted).

Here, Plaintiffs allege that "[b]ased on the schedules set by XTO," they "and the Putative Class Members worked over forty (40) hours nearly every (if not every) workweek they performed services for XTO." (Doc. No. 25 at 6.) They "did not get paid if they did not work." (Id.) Working over forty hours per week was "routine." (Id.)

These allegations, when considered in conjunction with the other allegations noted above in the Amended Complaint, plausibly allege a FLSA overtime claim because they show that they (1) were employees of XTO, (2) typically worked over forty hours per workweek, and (3) did not receive overtime pay for any of those weeks. See <u>Davis</u>, 765 F.3d at 242; <u>see also</u> <u>Rosario v. First Student Mgmt. LLC</u>, 247 F. Supp. 3d 560, 567 (E.D. Pa. 2017) (denying in part motion to dismiss because some plaintiffs alleged that they worked in excess of forty hours in a workweek and were not paid overtime for that excess time).[8]

---

[8] In <u>Rosario</u>, there were seventy-six named plaintiffs. 247 F. Supp. 3d at 566. In the Amended Complaint filed in <u>Rosario</u>, the three named plaintiffs whose claims survived the defendants' motion to dismiss alleged they "worked in excess of forty hours" in a specifically identified week and were "not paid overtime." See <u>Rosario</u>, 15-6478, Doc. No. 17 at 36-41. Although the plaintiffs in <u>Rosario</u> identified specific workweeks in which they worked over forty hours and were not paid overtime for the excess time, the Third Circuit in <u>Davis</u> stated that "we do not hold that a plaintiff must identify the exact dates and times that [he or] she worked overtime." 765 F.3d at 243. Therefore, Plaintiffs' allegations that they "routinely" work over forty (40) hours per week are sufficient to plausibly allege a FLSA violation. (Doc. No. 25 at 2.)

12

## V. CONCLUSION

For the foregoing reasons, Defendant XTO's Motion to Dismiss (Doc. No. 28) will be denied. An appropriate Order follows.